**ANDREW LAH**
California State Bar No. 234580
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
E-mail: andrew_lah@fd.org

Attorneys for Mr. Cira-Ramirez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| UNITED STATES OF AMERICA, | ) | Case No. | 08CR2429-WQH |
|---|---|---|---|
| | ) | Date: | September 2, 2008 |
| | ) | Time: | 2:00 p.m. |
| Plaintiff, | ) | | |
| | ) | NOTICE OF MOTIONS AND MOTIONS TO: | |
| | ) | | |
| vs. | ) | 1) | COMPEL DISCOVERY AND PRESERVE EVIDENCE; |
| | ) | 2) | DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE *MENS REA*; |
| | ) | 3) | DISMISS THE RESULTING IN DEATH CHARGE AS UNCONSTITUTIONAL; |
| ODILON CIRA-RAMIREZ, | ) | 4) | DISMISS THE AIDING AND ABETTING COUNTS; |
| | ) | 5) | BIFURCATE THE TRIAL; |
| | ) | 6) | SUPPRESS STATEMENTS AND EVIDENCE; |
| Defendant. | ) | 7) | SUPPRESS IDENTIFICATION EVIDENCE AND TESTIMONY; |
| | ) | 8) | GRANT LEAVE TO FILE FURTHER MOTIONS. |
| _____ | ) | | |

TO:     KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
        PETER MAZZA, ASSISTANT UNITED STATES ATTORNEY.

PLEASE TAKE NOTICE that on September 2, 2008, at 2:00 p.m., or as soon thereafter as counsel

may be heard, Defendant Efrain Odilon Cira-Ramirez, by and through his attorneys, Andrew Lah, and Federal

Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

**MOTIONS**

Defendant Odilon Cira-Ramirez, by and through his attorneys, Andrew Lah, and Federal Defenders of San Diego, Inc., moves this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

1)    Compel discovery and preserve evidence;

2)    Dismiss all counts for failure to allege *mens rea*;

3)    Dismiss the resulting in death charge as unconstitutional;

4)    Dismiss aiding and abetting counts;

5)    Bifurcate the trial;

6)    Suppress statements and evidence;

7)    Suppress identification evidence and testimony; and

8)    Grant leave to file further motions.


These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,


Dated: August 13, 2008                    *s/ Andrew Lah*_____
                                                          **ANDREW LAH**
                                                          Federal Defenders of San Diego, Inc.
                                                          Attorneys for Mr. Cira-Ramirez

**ANDREW LAH**
California State Bar No. 234580
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
E-mail: andrew_lah@fd.org

Attorneys for Mr. Cira-Ramirez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 08cr2430-WQH |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| ODILON CIRA-RAMIREZ, | ) STATEMENT OF FACTS AND |
| | ) MEMORANDUM |
| | ) OF POINTS AND AUTHORITIES IN SUPPORT |
| Defendant. | ) OF MOTIONS |
| | ) |
| | ) |

**I.**

**STATEMENT OF FACTS**[1]

The following statement of facts and facts further cited in this motion are based primarily on the probable cause statement. Mr. Cira-Ramirez in no way admits the truth of these facts nor their accuracy as cited in these motions. Further, Mr. Cira-Ramirez reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

On July 8, 2008, Border Patrol Agent Busiere were working in an area known as Carrizo Springs, California, approximately 17 miles east of the Tecate, California Port of Entry and 8 miles north of the United States/Mexico border. Agent Busiere came upon Moises Ramirez-Valdez, and learned from Mr. Ramirez that

---

[1]    The Statement of Facts derives primarily from government reports in this case. Mr. Escutia reserves the right to take a position contrary to the Statement Of Facts at the motions hearing and at trial.

1  he was traveling with a group of three before he left his group behind.  Ramirez related that he believed there

2  were a number of individuals lost in the desert, and that at least one individual in his group was dead.

3      Subsequent to discovering Mr. Ramirez, Border Patrol agents engaged in a rescue operation, ultimately

4  leading to the discovery of three deceased individuals.  The surviving members of the group were discovered

5  and later detained as material witnesses.  Mr. Cira-Ramirez, Gerardo Salta-Rocha, and Jose Hernandez-Rivas

6  were arrested in connection with alien smuggling.[2]

7      Subsequent to his arrest, Mr. Cira-Ramirez received medical attention at Palomar Hospital for heat

8  exposure.  That same day, government agents interrogated Mr. Cira-Ramirez about the events that occurred

9  prior to his hospitalization.

10     On July 23, 2008, the government charged Mr. Cira-Ramirez by way of indictment with six counts

11 alleging violations of various sections of  8 U.S.C. § 1324, including bringing in illegal aliens resulting in

12 death.  Counts one and three of the indictment, charging alien smuggling resulting in death, carry a potential

13 punishment of death.

14                                    **II.**

15               **MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

16     Mr. Cira-Ramirez requests the following discovery.  His request is not limited to those items of which

17 the prosecutor is aware.  It includes all discovery listed below that is in the custody, control, care, or

18 knowledge of any "closely related investigative [or other] agencies."  See United States v. Bryan, 868 F.2d

19 1032 (9th Cir. 1989).  He also requests preservation of evidence and has attached a proposed order thereon

20 for the Court's convenience.

21     1.    The Defendant's Statements.  The government must disclose to Mr. Cira-Ramirez *all* copies

22 of any written or recorded statements made by him; the substance of any statements made by Mr. Cira-

23 Ramirez that the government intends to offer in evidence at trial; any response by him to interrogation; the

24 substance of any oral statements that the government intends to introduce at trial and any written summaries

25 of him oral statements contained in the handwritten notes of the government agent; any response to any

26 Miranda warnings that may have been given to her; and any other statements by him.  Fed. R. Crim. P.

27  _____

28     [2]Mr. Salto-Rocha and Hernandez-Rivas are under indictment in Criminal Case Number 08cr2430-
BTM.

16(a)(1)(A) and (B).  The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* of Mr. Cira-Ramirez's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

2.    Arrest Reports, Notes and Dispatch Tapes.  Mr. Cira-Ramirez also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding her arrest or any questioning, if such reports have not already been produced *in their entirety*, be turned over to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Cira-Ramirez or any other discoverable material is contained.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and Brady v. Maryland, 373 U.S. 83 (1963).  See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968).  Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Cira-Ramirez are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(I).  Preservation of rough notes is requested, whether or not the government deems them discoverable.

3.    Brady Material.  Mr. Cira-Ramirez requests all documents, statements, agents' reports, and tangible evidence favorable to her on the issue of guilt and/or that affects the credibility of the government's case.  Impeachment and exculpatory evidence both fall within Brady's definition of evidence favorable to the accused.  United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

4.    Any Information That May Result in a Lower Sentence.  As discussed above, any information that may result in a more favorable sentence must also be disclosed pursuant to Brady, 373 U.S. 83.  The government must disclose any cooperation or attempted cooperation by Mr. Cira-Ramirez, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the United States Sentencing Commission Guidelines Manual ("Guidelines").  Also included in this request is any information relevant to a Chapter Three adjustment, a determination of Mr. Cira-Ramirez's criminal history, or any other application of the Guidelines.

5.    The Defendant's Prior Record.  Evidence of a prior record is available under Fed. R. Crim. P. 16(a)(1)(D).  Mr. Cira-Ramirez specifically requests a complete copy of any criminal record.

6.    Any Proposed 404(b) Evidence.  Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon request

1  of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature

2  . . ..” of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.  Sufficient

3  notice requires the government to “articulate *precisely* the evidential hypothesis by which a fact of

4  consequence may be inferred from the other acts evidence.” United States v. Mehrmanesh, 689 F.2d 822, 830

5  (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480,

6  1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

7         This includes any “TECS” records (records of prior border crossings) that the government intends to

8  introduce at trial, whether in its case-in-chief, impeachment, or rebuttal.  Although there is nothing

9  intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are “other

10  acts” evidence that the government must produce before trial.  United States v. Vega, 188 F.3d 1150, 1154-

11  1155 (9th Cir. 1999).

12        Mr. Cira-Ramirez requests that such notice be given *three weeks before trial* to give the defense time

13  to adequately investigate and prepare for trial.

14        7.    Evidence Seized.  Evidence seized as a result of any search, either warrantless or with a

15  warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

16        8.    Request for Preservation of Evidence.  The defense specifically requests that all dispatch tapes

17  or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,

18  or care of the government and that relate to the arrest or the events leading to the arrest in this case be

19  preserved.  This request includes, but is not limited to the **vehicle involved in the case**, **Mr. Cira-Ramirez's**

20  **personal effects, and any evidence seized from Mr. Cira-Ramirez or any third party**.  This request also

21  includes any material or percipient witnesses who might be deported or otherwise likely to become

22  unavailable (e.g. undocumented aliens and transients).

23        It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in

24  the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to

25  inform those parties to preserve any such evidence.

26        9.    Henthorn Material.  Mr. Cira-Ramirez requests that the Assistant United States Attorney

27  (“AUSA”) assigned to this case oversee (not personally conduct) a review of all personnel files of each agent

28  involved in the present case for impeachment material.  See Kyles v. Whitley, 514 U.S. 437, 438 (1995)

1  (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others

2  acting on the government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29

3  (9th Cir. 1991). This request includes, but is not limited to, any complaints filed (by a member of the public,

4  by another agent, or any other person) against the agent, whether or not the investigating authority has taken

5  any action, as well as any matter for which a disciplinary review was undertaken, whether or not any

6  disciplinary action was ultimately recommended. Mr. Cira-Ramirez further requests production of any such

7  information at least *one week* prior to the motion hearing and two weeks prior to trial. If the prosecutor is

8  uncertain whether certain information should be disclosed pursuant to this request, this information should

9  be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10       10.   Tangible Objects. Mr. Cira-Ramirez requests the opportunity to inspect, copy, and test, as

11  necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged

12  narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or

13  intended for use in the government's case-in-chief or were obtained from or belong to Mr. Cira-Ramirez. Fed.

14  R. Crim. P. 16(a)(1)(E). Specifically, Mr. Cira-Ramirez requests **color copies** of all photographs related to

15  this case in the government's possession.

16       11.   Expert Witnesses. Mr. Cira-Ramirez requests the name, qualifications, and a written summary

17  of the testimony of any person that the government intends to call as an expert witness during its case in chief.

18  Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well

19  as the bases and the reasons for the opinion(s). See United States v. W.R. Grace, 493 F.3d 1119 (9th Cir.

20  2007); United States v. Duvall, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice

21  did not adequately summarize or describe police detective's testimony in drug prosecution where notice

22  provided only a list of the general subject matters to be covered and failed to identify what opinion the expert

23  would offer on those subjects). This request includes, but is not limited to, disclosure of the qualifications

24  of any government witness who will testify that he understands and/or speaks Spanish or any other foreign

25  language that may have been used during the course of an interview with Mr. Cira-Ramirez or any other

26  witness.

27       Mr. Cira-Ramirez requests the notice of expert testimony be provided at a minimum of *three weeks*

28  *prior to trial* so that the defense can properly prepare to address and respond to this testimony, including

1  obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain

2  a hearing in advance of trial to determine the admissibility of qualifications of any expert.  See Kumho v.

3  Carmichael Tire Co., 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must

4  determine, reliability and relevancy of expert testimony and such determinations may require "special briefing

5  or other proceedings").

6      12.    Impeachment evidence.  Mr. Cira-Ramirez requests any evidence that any prospective

7  government witness has engaged in any criminal act whether or not resulting in a conviction and whether any

8  witness has made a statement favorable to Mr. Cira-Ramirez.  See Fed. R. Evid. 608, 609 and 613.  Such

9  evidence is discoverable under Brady, 373 U.S. 83.  See United States v. Strifler, 851 F.2d 1197 (9th Cir.

10  1988) (witness' prior record); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts

11  from a witness' credibility). **Specifically, Mr. Cira-Ramirez requests any evidence regarding the material**

12  **witnesses' prior record; prior criminal acts; and any other impeaching information.  Mr. Cira-Ramirez**

13  **also requests an opportunity to view the material witnesses' A-Files.  In the alternative, Mr. Cira-**

14  **Ramirez requests that the Court conduct an *in camera* review of the A-Files to determine if any Brady,**

15  **Giglio, or impeachment information exists.**

16      13.    Evidence of Criminal Investigation of Any Government Witness.  Mr. Cira-Ramirez requests

17  any evidence that any prospective witness is under investigation by federal, state or local authorities for any

18  criminal conduct.  United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

19      14.    Evidence of Bias or Motive to Lie.  Mr. Cira-Ramirez requests any evidence that any

20  prospective government witness is biased or prejudiced against him, or has a motive to falsify or distort his

21  or her testimony.  Pennsylvania v. Ritchie, 480 U.S. 39 (1987); Strifler, 851 F.2d 1197.  **To this end, Mr.**

22  **Cira-Ramirez requests discovery regarding all of the material witnesses' prior border**

23  **apprehensions/contacts and any other potential impeachment information regarding these witnesses.**

24      15.    Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity.  Mr. Cira-

25  Ramirez requests any evidence, including any medical or psychiatric report or evaluation, tending to show

26  that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and

27  any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an

28  alcoholic.  Strifler, 851 F.2d 1197; Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

16. <u>Witness Addresses</u>.  Mr. Cira-Ramirez requests the name and last known address of each prospective government witness.  <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).  Mr. Cira-Ramirez also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

17. <u>Name of Witnesses Favorable to the Defendant</u>.  Mr. Cira-Ramirez requests the name of any witness who made any arguably favorable statement concerning her or who could not identify him or who was unsure of his identity or participation in the crime charged.  <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th Cir. 1968); <u>Chavis</u>, 637 F.2d at 223; <u>Jones v. Jago</u>, 575 F.2d 1164,1168 (6th Cir. 1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1086 (1980).

18. <u>Statements Relevant to the Defense</u>.  Mr. Cira-Ramirez requests disclosure of any statement that may be "relevant to any possible defense or contention" that he might assert.  <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982).  **This includes grand jury transcripts that are relevant to the defense motion to dismiss the indictment.**

19. <u>Jencks Act Material</u>.  Mr. Cira-Ramirez requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews notes with the subject of the interview); <u>see also</u> <u>United States v. Riley</u>, 189 F.3d 802, 806-808 (9th Cir. 1999).  Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Cira-Ramirez to investigate the Jencks material.  Mr. Cira-Ramirez requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20. <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Mr. Cira-

1  Ramirez requests all statements and/or promises, expressed or implied, made to any government witnesses,

2  in exchange for their testimony in this case, and all other information that could arguably be used for the

3  impeachment of any government witnesses.

4        21.    <u>Agreements Between the Government and Witnesses</u>.  Mr. Cira-Ramirez requests discovery

5  regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future

6  compensation, or any other kind of agreement or understanding, including any implicit understanding relating

7  to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and

8  the government (federal, state and/or local).  This request also includes any discussion with a potential witness

9  about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea

10 bargain, even if no bargain was made or the advice not followed.

11       22.    <u>Informants and Cooperating Witnesses</u>.  Mr. Cira-Ramirez requests disclosure of the names

12 and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular,

13 disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime

14 charged against Mr. Cira-Ramirez.  The government must disclose the informant's identity and location, as

15 well as disclose the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro</u>

16 <u>v. United States</u>, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from

17 informants that exculpates or tends to exculpate Mr. Cira-Ramirez.

18       23.    <u>Bias by Informants or Cooperating Witnesses</u>.  Mr. Cira-Ramirez requests disclosure of any

19 information indicating bias on the part of any informant or cooperating witness.  <u>Giglio</u>, 405 U.S. 24.  Such

20 information would include what, if any, inducements, favors, payments or threats were made to the witness

21 to secure cooperation with the authorities.

22       24.    <u>Personnel Records of Government Officers Involved in the Arrest</u>.  Mr. Cira-Ramirez requests

23 all citizen complaints and other related internal affairs documents involving any of the immigration officers

24 or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Cira-

25 Ramirez.  <u>See</u> <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of these

26 documents, defense counsel will be unable to procure them from any other source.

27       25.    <u>Training of Relevant Law Enforcement Officers</u>.  Mr. Cira-Ramirez requests copies of all

28 written videotaped or otherwise recorded policies or training instructions or manuals issued by all law

1  enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department

2  of Homeland Security, etc.) to their employees regarding:  (a) the handling of vehicles suspected to be

3  transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within

4  those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the

5  occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes

6  consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects

7  and witnesses.  Mr. Cira-Ramirez also requests all written or otherwise attainable information regarding the

8  training of Customs agents at ports of entry in California to detect or discover contraband in vehicles entering

9  the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security

10 Department, by the DEA or other law enforcement agencies or individuals.

11      26.  <u>Performance Goals and Policy Awards</u>.  Mr. Cira-Ramirez requests disclosure of information

12 regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement

13 officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the

14 detection of contraband.  This request specifically includes information concerning performance goals, policy

15 awards, and the standards used by Customs for commending, demoting, or promoting agents for their

16 performance at the port of entry and their success or failure to detect illegal narcotics in general.

17      27.  <u>TECS Reports</u>.  Mr. Cira-Ramirez requests TECs reports.  Mr. Cira-Ramirez specifically

18 requests any "TECS" records related to him and the car seized in this case.  Any prior border crossings are

19 considered "other acts" evidence which the government must produce before trial.  <u>Vega</u>, 188 F.3d at 1154.

20      28.  <u>Reports of Scientific Tests or Examinations</u>.  Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Mr.

21 Cira-Ramirez requests disclosure and the opportunity to inspect, copy, and photograph the results and reports

22 of all tests, examinations, and experiments conducted upon the evidence in this case, including, but not limited

23 to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody,

24 or control of the government, the existence of which is known, or by the exercise of due diligence may

25 become known, to the attorney for the government, and that are material to the preparation of the defense or

26 are intended for use by the government as evidence in chief at the trial.

27      29.  <u>Brady Information</u>.  The defendant requests all documents, statements, agents' reports, and

28 tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the

1  government's case.  Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), impeachment as well as exculpatory

2  evidence falls within the definition of evidence favorable to the accused.  <u>United States v. Bagley</u>, 473 U.S.

3  667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

4         30.    <u>Any Proposed 404(b) Evidence</u>.  The government must produce evidence of prior similar acts

5  under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions which would be used to

6  impeach as noted in Fed. R. Crim. P. 609.  In addition, under Fed. R. Evid. 404(b), "upon request of the

7  accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of

8  any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.  The defendant

9  requests notice two weeks before trial to give the defense time to investigate and prepare for trial.

10        31.    <u>Specific Requests</u>.  Mr. Cira-Ramirez specifically requests the opportunity to view the "A-File"

11  of the material witness in this case.  He also specifically requests all reports and documentation relating to

12  prior apprehensions of the material witnesses.

13        32.    <u>Residual Request</u>.  The defendant intends by this discovery motion to invoke his rights to

14  discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution

15  and laws of the United States.

16                                            **III.**

17        **THE COURT SHOULD DISMISS ALL COUNTS OF THE INDICTMENT**
   **BECAUSE THEY CHARGE AIDING AND ABETTING, BUT DO NOT ALLEGE SPECIFIC**
18 **INTENT TO FACILITATE THE COMMISSION OF A CRIME BY ANOTHER.  IN ADDITION,**
   **COUNT ONE OMITS AN ESSENTIAL ELEMENT OF KNOWLEDGE; AND NONE OF THE**
19        **COUNTS PROVIDE CONSTITUTIONALLY ADEQUATE NOTICE.**

20        All counts of the indictment proceed on an aiding and abetting theory.  However, none charge the

21  necessary *mens rea* for aiding and abetting.  Accordingly, all counts must be dismissed.  Count One is

22  deficient for failure to allege the requisite knowledge and it should be dismissed.  None of the counts provide

23  the notice required by the Fifth and Sixth Amendments and they should be dismissed for that reason.

24 **A.    Failure To Charge Proper *Mens Rea*.**

25        The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise

26  infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."  Consistent with this

27  Constitutional requirement, the Supreme Court has held that an indictment must "<u>fully, directly, and</u>

28  <u>expressly, without any uncertainty or ambiguity</u>, set forth all the elements necessary to constitute the offense

1  intended to be punished." <u>United States v. Carll</u>, 105 U.S. 611, 612-13  (1881) (emphasis added).  It is black

2  letter law that an indictment that does not allege an element of an offense, even an implied element, is

3  defective.  <u>See, e.g.</u>, <u>Russell v. United States</u>, 369 U.S. 749 (1962); <u>Stirone v. United States</u>, 361 U.S. 212

4  (1960); <u>United States v. Du Bo</u>, 186 F.3d 1177 (9th Cir. 1999); <u>United States v. Keith</u>, 605 F.2d 462 (9th Cir.

5  1979).

6       The Ninth Circuit has held that "circuit law is clear that aiding and abetting contains an additional

7  element of specific intent, beyond the mental state required by the principal crime."    <u>United States v.</u>

8  <u>Sayetsitty</u>, 107 F.3d 1405, 1412 (9th Cir. 1997).  Thus, the "<u>elements</u> necessary to convict an individual under

9  an aiding and abetting theory are (1) that the accused had the specific intent to facilitate the commission of

10  a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that

11  the accused assisted or participated in the commission of the underlying offense, and (4) that someone

12  committed the underlying substantive offense." <u>United States v. Gaskins</u>, 849 F.2d 454, 459 (9th Cir. 1988)

13  (emphasis added).  "It is the aider and abettor's state of mind, rather than the state of mind of the principal,

14  that determines the former's liability." <u>United States v. Short</u>, 493 F.2d 1170, 1172, <u>modified</u>, 500 F.2d 676

15  (9th Cir. 1974).  Given that the Ninth Circuit has held that "the specific intent to facilitate the commission of

16  a crime by another" is an element of aiding and abetting, <u>Gaskins</u>, 849 F.2d at 459, it must be charged in the

17  indictment:  "If an element is necessary to convict, it is also necessary to indict, because elements of a crime

18  do not change as criminal proceedings progress." <u>United States v. Hill</u>, 279 F.3d 731, 741 (9th Cir. 2002).

19       Although all counts of the indictment should be dismissed for failure to charge the proper aiding and

20  abetting *mens rea* as set forth above, the allegations that Mr. Cira-Ramirez acted with knowledge <u>or reckless</u>

21  <u>disregard</u> regarding the named alien's right to come to or be in the United States are particularly problematic.

22  The reckless disregard *mens rea* is inconsistent with the specific intent requirement for aiding and abetting.

23  However, because none of the counts charge the specific intent to facilitate the commission of the substantive

24  offense, all counts must be dismissed.

25  **B.**    **Count One Fails to Allege the Requisite Knowledge.**

26       As to Count One, it alleges that the alien in question was brought to the United States at a place other

27  than a designated port of entry.  There is no allegation that Mr. Cira-Ramirez had knowledge of that fact, even

28  though there is nothing criminal about bringing an alien to the United States in and of itself. <u>See</u> <u>United States</u>

1  v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994) ("the presumption in favor of a scienter requirement should

2  apply to each of the statutory elements which criminalize otherwise innocent conduct").  Because knowledge

3  of that fact is essential to liability as to Count One, X-Citement Video requires knowledge of it.  The "intent

4  to violate the immigration laws" allegation, while necessary, is not sufficient to establish the very specific

5  knowledge requirement as to Count One (i.e., a grand juror could have concluded that there was an intent to

6  violate the immigration laws based upon the entire course of conduct rather than knowledge of the entry at

7  a place other than a port of entry).[3]  Because the indictment must "fully, directly, and expressly, *without any*

8  *uncertainty or ambiguity*, set forth all the elements necessary to constitute the offense intended to be

9  punished," Carll, 105 U.S. at 612-13 (emphasis added), Count One is deficient.

10 **C.    Lack of Notice**.

11      None of the counts allege *how* Mr. Cira-Ramirez may have committed any act that, when combined

12 with the appropriate specific intent, constituted aiding and abetting, particularly as to the "bring to" counts.

13 The Fifth and Sixth Amendments require notice, but Mr. Cira-Ramirez has no idea how the government could

14 show that he is responsible for bringing any of the aliens in the indictment to the United States.[4]

15                                                 **IV.**

16 **SECTION 1324 OF TITLE 8 OF THE UNITED STATES CODE VIOLATES THE FIFTH AND**
   **SIXTH AMENDMENTS TO THE CONSTITUTION BECAUSE CONGRESS IMPERMISSIBLY**
17 **STRUCTURED THE STATUTE SO THAT A JUDGE, RATHER THAN A JURY, DECIDES**
   **KEY FACTS THAT DETERMINE THE STATUTORY MAXIMUM PENALTIES**

18

19      Congress intentionally structured 8 U.S.C. §1324 such that a trial judge, rather than a jury, determines

20 the statutory maximum penalties for §1324 offenses by finding factors such as whether the offense was

21 committed for profit, or whether a death resulted.  Based on the reasoning in the Supreme Court's opinion in

22 Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and Cunningham

23 v. California, 549 U.S. ___, 127 S. Ct. 856 (2007), this statutory structure violates the Fifth and Sixth

24 Amendments to the Constitution.  Because there is no ambiguity in this regard, the statute cannot be saved

25

26      [3]      If the government claims that the grand jurors were adequately instructed, Mr. Cira-Ramirez
   requests that those instructions be produced.  See Fed. R. Crim. P. 6(e)(3)(E)(ii).

27
      [4]      At a minimum, the Court should order that the government provide a Bill of Particulars, see
28 Fed. R. Crim. P. 7(f), but even that would not cure the constitutionally deficient "notice" provided in the
   indictment.

1  by employing the doctrine of constitutional doubt.  Moreover, this Court does not have the authority to

2  construe the statute in a constitutionally inoffensive manner.    Accordingly, section 1324 is facially

3  unconstitutional.

4        This issue is arguably foreclosed by the Ninth Circuit's opinion in United States v. Matus-Leva, 311

5  F.3d 1214, 1217 (9th Cir. 2002), even though that opinion badly mischaracterized the argument presented in

6  that case, and undertook only the most superficial analysis of it.  The Opinion reveals the weakness of its

7  analysis by claiming that Matus-Leva's argument is "wholly without merit," id. at 1217, yet overlooks the fact

8  that  in his dissent in Jones v. United States, 526 U.S. 227 (1999), Justice Kennedy, joined by Chief Justice

9  Rehnquist and Justices O'Connor and Breyer, specifically agreed with Matus-Leva's construction of §1324.

10        In Jones, the Court was addressing whether the bodily injury and resulting in death provisions in the

11  federal car-jacking statute were elements or sentencing factors.  Despite the fact that the intent of Congress

12  in this respect was much less clear from the plain language of the car-jacking statute than it is with

13  §1324(a)(1), the dissenters believed that the bodily injury and death resulting provisions of the car-jacking

14  statute were clearly sentencing provisions.  In support of this, the dissent analogized to §1324(a)(1), noting

15  that §1324(a)(1)(A) sets out elements of the offense, and §1324(a)(1)(B) sets out sentencing factors: "in one

16  established statutory model, Congress defines the elements of an offense in an initial paragraph ending with

17  the phrase 'shall be punished as provided in' a separate subsection.  The subsection provides for graded

18  sentencing ranges, predicated upon specific findings (such as serious bodily injury or death).  See, e.g., 8

19  U.S.C. §1324(a)(1)."  Id. at 258 (emphasis added).  Thus, the four dissenters in Jones specifically recognized

20  that §1324(a)(1)(A) sets out elements of the offenses therein, and §1324(a)(1)(B) sets out sentencing factors.

21        Nevertheless, this Court is arguably bound by Matus-Leva; the issue is set out here to preserve it for

22  later appeal.  If the Court would like further briefing on this issue, defense counsel will provide it.

23                                         **V.**

24  **IF THE COURT CHOOSES TO CONSTRUE §1324 IN SUCH A WAY THAT THE**
   **"SENTENCING FACTORS"THEREIN ARE NOW OFFENSE ELEMENTS, THEN THE**
25  **COURT MUST APPLY A _MENS REA_ TO THOSE FACTORS**

26        If §1324 is to be "re-written" such that the sentencing factors therein are elements of the offenses a

27  simple change in nomenclature is not all that occurs.  Rather, the mens rea requirements for the various §1324

28  offenses must then attach to those sentencing factors.  If the Court applies a mens rea to those factors, then

1   it must dismiss all counts of the indictment that charged those factors without alleging any *mens rea*.

2   Again, this argument is likely precluded by <u>Matus-Leva</u>, 311 F.3d at 1218-19.  However, the panel

3   in that case did not address the broad *mens rea* argument raised in that case, and herein – <u>Matus-Leva</u> only

4   addressed the *mens rea* argument as it related to the death resulting issues.  Nevertheless, the Court has seen

5   such briefing countless times before; for the sake of brevity, defense counsel will not include it herein, but

6   will provide it if so requested.  The argument is mainly being set out here to preserve it for later appeal.

7   **VI.**

8   **IF THERE IS NO MENS REA REQUIREMENT WITH RESPECT TO THE DEATH**
    **RESULTING FACTOR IN 8 U.S.C. §1324(a)(1)(B)(iv), THAT PORTION OF THE STATUTE IS**
9   **UNCONSTITUTIONALLY DISPROPORTIONATE AND VAGUE**

10  **A.    If There Is No Mens Rea Attached To The Death Resulting Factor In §1324(a)(1)(B)(iv),**
    **That Provision Is Unconstitutionally Disproportionate.**

11

12  If this Court rejects the arguments above and construes the death resulting language in

13  §1324(a)(1)(B)(iv) as not requiring any showing of *mens rea*, that portion of the statute is unconstitutional

14  because it authorizes the death penalty for conduct that does not satisfy the minimum *mens rea* requirement

15  for imposition of the death penalty – reckless indifference to human life in the course of committing a violent

16  felony.  That is, that portion of the statute is unconstitutionally disproportionate, in violation of the Eighth

17  Amendment.  The <u>Matus-Leva</u> opinion does not address the proportionality issue.  <u>See</u> <u>Matus-Leva</u>, 311 F.3d

18  at 1218 n.3.

19  In <u>United States v. Cheely</u>, 36 F.3d 1439 (9th Cir. 1994), the Ninth Circuit addressed a similar issue.

20  The defendants were charged with sending a mail bomb, with death resulting, in violation of 18 U.S.C. §§

21  844(d) and 1716(d).  The Court noted that the statute, as written, did "not require that the defendant's behavior

22  be reckless, that the accident be reasonably foreseeable, or that the defendant even know that the material is

23  capable of exploding."  <u>Id.</u> at 1443 n.8.  Thus, the statutes "authorize[d] the death penalty not only for persons

24  who murder by means of mail bomb, but also for a much broader class of less culpable persons. . . .  [T]hey

25  are broad enough to authorize death for persons guilty of no more than involuntary manslaughter."  <u>Id.</u> at

26  1433.

27  The Ninth Circuit went on to note that this scenario raised two constitutional problems.  First, "in such

28  circumstances, the death penalty would be disproportionately severe," as the "*least* culpable mental state the

1  Supreme Court has held death-eligible is reckless indifference to human life in commission of a felony." <u>Id.</u>

2  at 1439 & n.9 (citing <u>Tison v. Arizona</u>, 481 U.S. 137, 157-58 (1987)).[5] Second, because the statutes

3  encompassed a broad class of death-eligible defendants, the result could be "wanton" and "freakish"

4  sentencing disparities of the kind prohibited by the Supreme Court in <u>Furman v. Georgia</u>, 408 U.S. 238

5  (1972). Accordingly, the Court held that the statutory provisions in that case were unconstitutional because

6  they did not genuinely narrow the class of persons eligible for the death penalty.[6] <u>Id.</u> at 1446.

7      The Sixth Circuit arrived at a similar holding in <u>United States v. Rebmann</u>, 226 F.3d 521, 524 (6th

8  Cir. 2000), <u>overruled on other grounds</u>, <u>United States v. Leachman</u>, 309 F.3d 377 (6th Cir. 2002). In that case,

9  the defendant pled guilty to distribution of heroin in violation of 21 U.S.C. § 841(a)(1), which has a maximum

10  sentence of twenty years. However, the district court found that the defendant's ex-husband's death resulted

11  from the heroin distribution, and consequently her maximum sentence was increased to life. In reversing that

12  sentence following <u>Apprendi</u>, the Sixth Circuit noted the incongruity of subjecting a defendant to a potential

13  life term based on death resulting regardless of the defendant's intent with respect to that death:

14      [I]t would indeed require a casual approach to the trial rights afforded defendants under our
         Constitution if this court were to allow a trial court to determine that a defendant who pled

15      guilty merely to the physical distribution of a drug (with a corresponding sentence of less than

16  ———————————————

17     [5]    The government may argue that the offense here is tantamount to felony murder, and thus no
   *mens rea* need be alleged or shown. However, the felony murder rule requires a *mens rea* with respect to the

18  resulting death – reckless indifference to human life. <u>See</u> <u>Tison</u>, 481 U.S. at 155-58. Moreover, with limited
  exceptions (espionage and treason), the felony murder rule only applies to violent felonies. <u>See</u> 18 U.S.C.

19  §1111; 18 U.S.C. §3591 (indicating that death sentence may only be imposed in felony murder situation if

20  defendant engaged in act of violence with reckless disregard for human life); <u>Schad v. Arizona</u>, 501 U.S. 624,
  640 (1991) (common law felony murder applies to violent felonies, generally robbery). Alien smuggling is

21  not a violent felony. Finally, Congress added death resulting language to over forty statutes in 1994, including
  defacing religious property under 18 U.S.C. §247. It is hard to believe that Congress intended to create several

22  new, specific felony murder offenses, even for such minor offenses as 18 U.S.C. §247, especially given the

23  codification of the felony murder rule in 18 U.S.C. §1111.

24     [6]    Justice Thomas made a similar point in his concurrence in <u>Apprendi</u>: "in the area of capital
  punishment, unlike any other area, we have imposed special constraints on a legislature's ability to determine

25  what facts shall lead to what punishment – we have restricted the legislature's ability to define crimes. Under
  our recent capital-punishment jurisprudence, [no jurisdiction] could provide . . . that a person shall be death

26  eligible automatically upon conviction for certain crimes." <u>Apprendi</u>, 530 U.S. at 523 (Thomas, J,

27  concurring). Here, if there is no *mens rea* requirement with respect to §1324(a)(1) offenses, then a defendant
  may be automatically death eligible based on the fortuity of whether someone dies during the offense,

28  regardless of whether that death has anything to do with the defendant's conduct or intentions. This is
  essentially the position the government has taken in the past.

1   20 years) is subject to a sentence of up to life imprisonment because the court believed, only
2   by a preponderance of the evidence, that death resulted from that crime <u>regardless of the
    defendant's intent to harm.</u>

3   <u>Id.</u> at 525 (emphasis added).  The concern about subjecting a defendant to <u>life</u> imprisonment based on a death

4   resulting for which the defendant had no intent is dramatically heightened when a defendant is subject to a

5   death sentence under similar circumstances.[7]

6       The government may respond that it is nonetheless acceptable to make a defendant death eligible,

7   regardless of his mental state surrounding the fact that makes him death eligible, so long as the defendant's

8   mental state is taken into account in the death penalty sentencing phase; *i.e.*, the jury can sort out whether a

9   defendant had the constitutionally required *mens rea* at the sentencing phase.  There is no precedent for such

10  a capital crimes system,[8] and it would indeed be "cruel and unusual" to subject a defendant who utterly lacked

11  a *mens rea* with respect to a death to such an ordeal.  The Supreme Court has never approved an execution

12  where the underlying capital conviction did not involve a homicide at all, and has essentially held that the

13  death penalty is disproportionate in cases other than murder.  <u>See</u> <u>Kennedy v. Louisiana</u>, 554 U.S. ___ (2008)

14  <u>Coker v. Georgia</u>, 433 U.S. 584 (1977) (death penalty disproportionate for rape), .  Indeed, the assumption

15  that conviction for some form of murder is a required predicate for any death penalty sentencing proceeding

16  is inherent in Supreme Court precedent.  <u>See, e.g.</u>, <u>Tuilaepa v. California</u>, 512 U.S. 967, 971-72 (1994)

17  (equating "a crime for which the death penalty is a proportionate penalty" with "a homicide case").

18

19

20

---

21      [7]    Interestingly, in a pre-<u>Apprendi</u> opinion, the Eleventh Circuit held that the death resulting factor
22  in the car-jacking statute was a sentencing factor, not an element, but that court nevertheless noticed the
    importance of taking a special approach in capital cases:  "the district court is required to send to the jury the
23  question of whether death resulted in one instance – when the government seeks capital punishment."  <u>United
    States v. Williams</u>, 51 F.3d 1004, 1010 n.5 (11th Cir. 1995).

24

        [8]    Actually, there is precedent *against* such a system.  A post-conviction *mens rea* requirement
25  would nonetheless be subject to the protections contained in <u>Apprendi</u>.  <u>See generally</u> <u>Ring v. Arizona</u>, 536
26  U.S. 584 (2002).  In addition to the right to a jury finding, and the beyond a reasonable doubt standard,
    <u>Apprendi</u> also requires that the government comply with the Fifth Amendment grand jury right and the Sixth
27  Amendment right to notice.  <u>See United States v. Rodriguez-Escutia</u>, 358 F.3d 1156 (9th Cir. 2004) (finding
    that maximum sentence could not be increased due to failure to allege the enhancing fact in the charging
28  document).  Because the indictment here does not allege the constitutionally required *mens rea*, <u>Rodriguez-
    Escutia</u> precludes enhancement.

**B.**     **If There Is No Mens Rea Attached To The Death Resulting Factor In §1324(a)(1)(B)(iv), That Provision Is Unconstitutionally Vague.**

If there is no *mens rea* with respect to the death resulting factor, then the statute is also unconstitutionally vague.  The void-for-vagueness doctrine requires that a statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited."  Kolender v. Lawson, 461 U.S. 352, 357 (1983).  The Supreme Court has long recognized that "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*."  Colautti v. Franklin, 439 U.S. 379, 395 (1979).

Based on the government's past interpretation of the death resulting provision in §1324(a)(1)(B)(iv), a defendant could be subjected to life imprisonment or death if a person he is smuggling is hit by a bolt of lightning.  Surely no rational person would think that was the meaning of this statute.

The Fifth Circuit was confronted with a similar problem in United States v. Hayes, 589 F.2d 811 (5th Cir. 1979).  The defendant in that case, a police officer, was convicted for violating an individuals' civil rights under color of law, 18 U.S.C. §242, which permitted a life sentence "if death results."  The court in that case first held that the death resulting provision did not require that the defendant intended the death to result.  In response to the defendant's vagueness argument, the court held that a "fundamental principle of criminal law is that a person is held responsible for all consequences proximately caused by his criminal conduct.  Thus, where events are foreseeable and naturally result from one's criminal conduct, the chain of legal causation is unbroken and the perpetrator is held criminally responsible for the resulting harm."  Id. at 821.  The court went on to state that if a person is struck by lightning while an officer is violating that person's civil rights, there is no foreseeabilty of that event (nor deterrence value in punishing that event), and thus there is no criminal liability.  Thus, the court essentially held that the death resulting language in that statute required a showing of negligence.  Here, the district court and the government do not even go that far.

Thus, the Fifth Circuit in Hayes recognized the vagueness problem, and at least found a way around it.  The problem with employing the Fifth Circuit's approach is that it is unprecedented to attach a negligence *mens rea* to a fact that makes a defendant eligible for the death penalty.  If this Court were inclined to imply a *mens rea* in an effort to save that portion of the statute, it would be sensible to at least imply a *mens rea* that satisfies minimum constitutional proportionality standards; *i.e.*, reckless indifference to human life.  If this

1  Court chooses to take that approach, the district court must be reversed because that *mens rea* was not pled

2  in the indictment, and the district court held that the government need not prove to the jury any *mens rea* with

3  respect to the deaths.

4       Again, this issue is arguably precluded by <u>Matus-Leva</u>, 311 F.3d at 1219.  It is being set out here

5  mostly to preserve it for later appeal.  It is set out in somewhat greater detail than other items cited to be

6  preserved because of its interplay with the proportionality argument (which was not decided in <u>Matus-Leva</u>,

7  311 F.3d at 1218 n.3).

8  **VII.**

9  **SEVERAL COUNTS MUST BE DISMISSED BECAUSE CONGRESS**
   **DID NOT INTEND AIDING AND ABETTING LIABILITY UNDER §1324(a)(2)**

10

11       It is clear, for numerous reasons, that Congress did not intend aiding and abetting liability to attach

12  to offenses under 8 U.S.C. §1324(a)(2).  Thus, the counts that so charge should be dismissed.  However, this

13  issue is precluded at this level by <u>United States v. Angwin</u>, 271 F.3d 786, 800-04 (9th Cir. 2001).  It is being

14  raised here to preserve it for later appeal.

15  **VIII.**

16  **THE COURT SHOULD BIFURCATE THE TRIAL SO THAT THE DEATH RESULTING**
    **FACTOR WOULD ONLY BE PRESENTED TO A JURY IF THE JURY FINDS THE**

17  **OTHER ELEMENTS OF THE CHARGED OFFENSES**

18       Pursuant to Federal Rules of Criminal Procedure 8 and 14, Mr. Cira-Ramirez requests that the trial

19  be bifurcated so that the "resulting in death factor" alleged in Count One will be presented to the jury only

20  if the jury finds the other elements comprising the offenses charged in those counts, and only after all the other

21  counts in the indictment have been tried.  The prejudice inherent in this context is apparent – the fact that a

22  death occurred is extremely and unfairly prejudicial,[9] and is irrelevant to the other elements of the offenses

23  charged.  Moreover, there would be little cost in judicial economy to bifurcate the death resulting factor.  This

24  Court recognized as much in the <u>Matus-Leva</u> case.

25       In his concurring opinion in <u>Apprendi</u>, Justice Thomas stated that the common practice where a

26  sentencing enhancement factor may be prejudicial is to "to bifurcate the trial, with the jury only considering

27  _____

28      [9]    The unfairness of the prejudice is all the more clear given that the tragic death in the instant case was not the result of a high speed chase but as a result of conditions of the vehicle.

1 the [factor that enhances the sentence] after it has reached a guilty verdict on the core crime." 530 U.S. at 521

2 n.10. There, Justice Thomas was addressing the situation where a prior conviction is the sentencing

3 enhancing factor. Presumably, if bifurcation is the common practice in such a situation, it should also be the

4 common, and appropriate, practice when the sentencing enhancing factor/element is something as inherently

5 prejudicial as the fact that a death resulted, particularly a death for which the defendant had no *mens rea*. The

6 Eleventh Circuit's decision in <u>United States v. Williams</u>, 51 F.3d 1004, 1010 (11th Cir. 1995) (finding that

7 similar evidence in bifurcated trial should have been excluded but declining to reverse because the district

8 court may not have abused its discretion under the circumstances of the case and any error was harmless),

9 <u>overruled on other grounds by</u> <u>Jones v. United States</u>, 526 U.S. 227 (1999), supports this position.

10 **IX.**

11 **ANY STATEMENTS MADE BY MR. CIRA-RAMIREZ SHOULD**
**BE SUPPRESSED BECAUSE THEY WERE NOT TAKEN IN COMPLIANCE**

12 **WITH *MIRANDA* AND THEY WERE INVOLUNTARY UNDER 18 U.S.C. §3501**

13 **A.    The Government Must Demonstrate Compliance With *Miranda.***

14 The Supreme Court has held that the government may not use statements, whether exculpatory or

15 inculpatory, obtained during custodial interrogation of the defendant unless it demonstrates the use of

16 procedural safeguards effective to secure the privilege against self-incrimination. <u>Miranda v. Arizona</u>, 384

17 U.S. 436, 444 (1966). The law imposes no substantive duty upon the accused to make any showing other than

18 that the statements were taken while the accused was in custody and subject to interrogation. <u>Id</u>. at 476.

19 Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into

20 custody or otherwise deprived of her freedom of action in any significant way. Id. at 477; <u>see also Orozco</u>

21 <u>v. Texas</u>, 394 U.S. 324, 327 (1969). In <u>Stansbury v. California</u>, 511 U.S. 318 (1994), the Supreme Court

22 stated that "the initial determination of custody depends on the objective circumstances of the interrogation,

23 not on the subjective views harbored by either the interrogating officers or the person being questioned." <u>Id</u>.

24 at 323.

25 When it takes an accused's statement during custodial interrogation, a heavy burden rests on the

26 government to demonstrate that the accused intelligently and voluntarily waived her privilege against

27 self-incrimination. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that

28 under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned

1 and the consequences of the decision to abandon it." <u>United States v. Garibay</u>, 143 F.3d 534, 536 (9th Cir.

2 1998) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)). The Ninth Circuit has stated that "[t]here is a

3 presumption against waiver." <u>Garibay</u>, 143 F.3d at 536. The standard of proof for a waiver of constitutional

4 rights is high. <u>Miranda</u>, 384 U.S. at 475; <u>see also United States v. Heldt</u>, 745 F.2d 1275, 1277 (9th Cir. 1984)

5 (the burden on the government is great, the court must indulge every reasonable presumption against waiver

6 of fundamental constitutional rights) (citing <u>Johnson v. Zerbst</u>, 304 US 458, 464 (1938)). Finally, it should

7 be noted that, since Miranda rests on a constitutional foundation, <u>see</u> <u>Dickerson v. United States</u>, 530 U.S.

8 428, 438 (2000), no law or local court rule relieves the government of its burden to prove that Mr. Cira-

9 Ramirez voluntarily waived the <u>Miranda</u> protections. <u>Miranda</u>, 384 U.S. at 475.

10       The validity of the waiver depends upon the particular facts and circumstances of the case, and

11 include the background, experience, and conduct of the accused. <u>Edwards v. Arizona</u>, 451 U.S. 477, 482

12 (1981); <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938); <u>see also</u> <u>Garibay</u>, 143 F.3d at 536; <u>United States v.</u>

13 <u>Bernard S.</u>, 795 F.2d at 751 ("a valid waiver of Miranda rights depends upon the totality of the circumstances,

14 including the background, experience and conduct of the accused"). In <u>Derrick v. Peterson</u>, 924 F.2d 813 (9th

15 Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two prong

16 analysis: the waiver must be both (1) voluntary; and, (2) knowing and intelligent. <u>Id.</u> at 820. The

17 voluntariness prong of this analysis "is equivalent to the voluntariness inquiry [under] the [Fifth] Amendment

18 . . . ." Id. The knowledge prong mandates an inquiry into whether "the waiver [was] made with a full

19 awareness both of the nature of the right being abandoned and the consequences of the decision to abandon

20 it." Id. (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)); accord <u>Garibay</u>, 143 F.3d at 436. Thus, "[o]nly

21 if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the

22 requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."

23 <u>Derrick</u> at 820 (quoting <u>Moran v. Burbine</u>, 475 U.S. at 521) (emphasis in original) (citations omitted)).

24       Here, Mr. Cira-Ramirez was interrogated hours after being discharged from Palomar Hospital, where

25 he received treatment for heat exposure. Unless and until it shows the agents properly administered the

26 Miranda warnings and obtained a knowing and intelligent waiver from Mr. Cira-Ramirez, the government

27 cannot use evidence obtained as a result of any custodial interrogation that occurred after Mr. Cira-Ramirez's

28

1  arrest.  Miranda, 384 U.S. at 479.[10]

2    **B.    The Government Bears the Burden of Proving that Mr. Cira-Ramirez's Alleged**
3    **Statements Were Made Voluntarily**

4        Even when the procedural safeguards of Miranda have been satisfied, a defendant in a criminal case

5  is deprived of due process of law if her conviction is founded upon an involuntary confession.  Arizona v.

6  Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964).  The government bears the

7  burden of proving that a confession is voluntary.  Lego v. Twomey, 404 U.S. 477, 483 (1972).

8        In order to be voluntary, a statement must be the product of a rational intellect and free will.

9  Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will was overborne

10  in a particular case, this Court must consider the totality of the circumstances.  Schneckloth at 226; see also

11  United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993).  A statement is  involuntary if it is

12  "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight,

13  [or] by the exertion of any improper influence."  Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v.

14  United States, 168 U.S. 532, 542-43 (1897)); see also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir.

15  1981).

16        To meet its burden, the government must demonstrate that Mr. Cira-Ramirez's statement was not the

17  result of either threats or promises made by the agents, but was made voluntarily, outside the presence of the

18  jury, whether any statements made by the defendant were voluntary.

19                                              **X.**

20    **THE COURT SHOULD SUPPRESS ALL IDENTIFICATION EVIDENCE AND TESTIMONY**

21        Here, the government has obtained a pre-trial identification by way of a photo line-up in which Mr.

22  Cira-Ramirez allegedly was identified.  The government may seek to introduce the agents' testimony regarding

23  the identification made during this photo line-up.  It may also seek to introduce an in-court identification

24  through a material witness based on an identification made during a previous photo line-up.  The photo line-

25  ups conducted in this case were impermissibly suggestive and were not conducted with the necessary

26  procedural safeguards, such as cautionary instructions, obtaining a description beforehand of the individual,

27  ———————————————

28        [10]The defense just received the video of Mr. Cira-Ramirez's post-arrest statement on August 12, 2008,
      and may find it necessary to supplement this motion.

1  obtaining information regarding the opportunity to observe the individual, and the like.  Accordingly, any in-

2  court identification, if one occurs, is irreparably tainted by the improper out-of-court photo line-up and should

3  not be permitted.

4  **A.      The Photo Line-Ups Conducted In This Case Violated Mr. Cira-Ramirez's Due Process Rights.**

5          Identification testimony obtained by unduly suggestive procedures violates a defendant's right to due

6  process because it may lead to an irreparably mistaken identification.  <u>Simmons v. United States</u>, 390 U.S.

7  377, 384 (1968); <u>Stovall v. Denno</u>, 388 U.S. 293, 301 (1967); <u>Neil v. Biggers</u>, 409 U.S. 188, 196 (1972);

8  <u>Blanco v. Singletary</u>, 943 F.2d 1477, 1508 (11th Cir. 1991).  A suggestive pre-trial identification may so taint

9  subsequent out-of-court and in-court identifications that an accused is denied due process of law if the witness

10  is permitted to make the in-court identification.  <u>United States v. Love</u>, 746 F.2d 477, 478 (9th Cir. 1984).

11  Once a procedure is established to be impermissibly suggestive, the reliability of the subsequent in-court

12  identification of evidence must be analyzed by weighing the indicia of reliability against the indicia of

13  improper influence—that is, "the corrupting tendencies of a suggestive pre-trial identification procedure."

14  <u>United States v. Field</u>, 625 F.2d 862, 867 (9th Cir. 1980).  This Circuit has held that "[c]onvictions based on

15  in-court identifications following a pre-trial identification by photograph will be set aside where the

16  photographic identification procedure was so impermissibly suggestive as to give rise to a substantial

17  likelihood of misidentification."  <u>United States v.  Barrett</u>, 703 F.2d 1076, 1084 (9th Cir. 1983).

18          If the photo line-up was unduly suggestive, there is a presumption against the admissibility of the

19  in-court identification unless it is demonstrated to be reliable under the totality of the circumstances.  <u>Manson</u>

20  <u>v. Braithwaite,</u> 432 U.S. 98 (1977); <u>Neal v. Biggers</u>, 409 U.S. 188, 189 (1972); <u>Ponce v. Cupp</u>, 333, 336 (9th

21  Cir. 1984).  The following factors must be considered in assessing the reliability of identification testimony:

22  the witness's opportunity to view the perpetrator; the witness's degree of attention; the witness's level of

23  certainty; the time between the crime and the confrontation; and the accuracy of the prior description.  <u>Neal</u>,

24  409 U.S. at 199; <u>Blanco v. Singletary</u>, 943 F.2d 1477, 1508 (11th Cir. 1991); <u>United States v. Flannigan</u>, 884

25  F.2d 945, 949 (7th Cir. 1989).  An evidentiary hearing is required to make such a determination and Mr. Cira-

26  Ramirez requests such a hearing.  Furthermore, Mr. Cira-Ramirez requests the following discovery relating

27  to the photo line-ups and identification procedures, including but not limited to:  (1) any training manuals,

28  Department of Justice materials, or Customs and Border Protection materials detailing and describing agents'

1  training regarding photo line-ups/suspect identification.

2  **XI.**

3  **MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

4        Mr. Cira-Ramirez and defense counsel have received 127 pages of discovery.  Discovery is not yet

5  complete.  Mr. Cira-Ramirez requests the opportunity to file further motions as new information comes to

6  light or as the interests of justice require.

7  **XII.**

8  **CONCLUSION**

9        For the foregoing reasons, Mr. Cira-Ramirez respectfully requests that the Court grant the above

10  motions.

11                         Respectfully submitted,

12  Dated:  August 13, 2008                 _s/ Andrew Lah_____

13                        **ANDREW LAH**
                      Federal Defenders of San Diego, Inc.
                      Attorneys for Mr. Cira-Ramirez

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **ANDREW LAH**
California State Bar No. 234580
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, California  92101-5008
Telephone:  (619) 234-8467 Ext. 3737
4 | Facsimile:    (619) 687-2666
andrew_lah@fd.org
5 |
6 | Attorneys for Mr. Cira-Ramirez
7 |
8 | UNITED STATES DISTRICT COURT
9 | SOUTHERN DISTRICT OF CALIFORNIA
10 |
11 | UNITED STATES OF AMERICA,                    )          Case No. 08cr2429-WQH
                                                 )
12 |              Plaintiff,                      )
                                                 )
13 | v.                                           )          **PROOF OF SERVICE**
                                                 )
14 | **ODILON CIRA-RAMIREZ,**                     )
                                                 )
15 |              Defendant.                      )
                                                 )
16 |
17 |              Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of
18 | his information and belief, and that a copy of the foregoing document has been served via CM/ECF this day
19 | upon:
20 |              **Assistant United States Attorney**
                 efile.dkt.gc1@usdoj.gov
21 |
22 | Dated: August 13, 2008                                   *s/ ANDREW LAH*
                                                          **ANDREW LAH**
23 |                                                       Federal Defenders of San Diego, Inc.,
                                                          andrew_lah@fd.org
24 |
25 |
26 |
27 |
28 |