1  KAREN P. HEWITT
   United States Attorney
2  PETER J. MAZZA
   DAVID D. LESHNER
3  Assistant United States Attorneys
   California Bar No. 239918, 207815
4  Federal Office Building
   880 Front Street, Room 6293
5  San Diego, California 92101-8893
   Telephone:  (619) 557-7034/ (619) 557-7163
6
7  Attorneys for Plaintiff
   United States of America
8
                    UNITED STATES DISTRICT COURT
9
                  SOUTHERN DISTRICT OF CALIFORNIA
10
11  UNITED STATES OF AMERICA,      )    Case No.  08CR2429-WQH
                                   )
12                    Plaintiff,   )    DATE: September 2, 2008
                                   )    TIME: 2:00 p.m.
         v.                        )
13                                 )    GOVERNMENT'S RESPONSE TO
    ODILON CIRA-RAMIREZ,           )    DEFENDANT'S MOTIONS TO:
14                                 )
                      Defendant.   )    (1) COMPEL DISCOVERY AND
15                                 )        PRESERVE EVIDENCE;
                                   )    (2) DISMISS THE INDICTMENT
16                                 )        FOR FAILURE TO ALLEGE
                                   )        *MENS REA*;
17                                 )    (3) DISMISS THE RESULTING IN
                                   )        DEATH CHARGE AS
18                                 )        UNCONSTITUTIONAL;
                                   )    (4) DISMISS THE AIDING AND
19                                 )        ABETTING COUNTS;
                                   )    (5) BIFURCATE THE TRIAL;
20                                 )    (6) SUPPRESS STATEMENTS AND
                                   )        EVIDENCE;
21                                 )    (7) SUPPRESS IDENTIFICATION
                                   )        AND TESTIMONY; AND
22                                 )    (8) GRANT LEAVE TO FILE
                                   )        FURTHER MOTIONS
23                                 )
                                   )
24                                 )    TOGETHER WITH A STATEMENT
                                   )    OF FACTS AND A MEMORANDUM
25                                 )    OF POINTS AND AUTHORITIES
    _____)
26
27  ///
28  ///

1  COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and

2  through its counsel, Karen P. Hewitt, United States Attorney, and

3  Peter J. Mazza and David D. Leshner, Assistant United States

4  Attorneys, and hereby files its response in opposition to

5  Defendant Odilon Cira-Ramirez's above-captioned motions.  Said

6  response is based upon the files and records of this case,

7  together with the attached statement of facts and accompanying

8  memorandum of points and authorities.

9  I

10  **STATEMENT OF THE CASE**

11  A.  **THE CHARGE**

12  On July 23, 2008, a grand jury sitting in the Southern

13  District of California charged Defendant in a six-count

14  indictment, charging: two counts of bringing in illegal aliens

15  resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(i)

16  and (a)(1)(B)(iv); one count of bringing in illegal aliens, in

17  violation of 8 U.S.C. § 1324(a)(1)(A)(i); and three counts

18  bringing in illegal aliens for financial gain, in violation of 8

19  U.S.C. § 1324(a)(2)(B)(ii), and aiding and abetting, in violation

20  of 18 U.S.C. § 2.

21  B.  **STATUS OF DISCOVERY**

22  To date, the Government produced approximately 127 pages of

23  written discovery and one DVD to Defendant.  The materials

24  produced include, _inter_ _alia_: (1)  investigative reports; (2)

25  Defendant's criminal history; (3) photographs taken throughout the

26

27

28  2

08CR2429-WQH

1   investigation; and (4) post-arrest statements of Defendant and the

2   material witness involved in the case.

3                                    II

4                           **STATEMENT OF FACTS**

5   **A.    DEFENDANT LEADS GROUP FROM MEXICO INTO THE UNITED STATES**

6          According to the lone surviving material witness, Moises

7   Ramirez-Valdez, on July 7, 2008, at approximately 12:00 p.m.,

8   Defendant led Ramirez-Valdez and two other illegal aliens,

9   Cristobal Camal-Chan and Antonio Aleman-Recho, north from a

10  location just south of the United States-Mexico border into the

11  United States. Ramirez-Valdez later stated this was the third

12  time in the span of one week that he had tried to cross into the

13  United States with Cira-Ramirez as his guide. Ramirez-Valdez

14  stated that the group walked until approximately 10:00 p.m. on

15  July 7, 2008 before stopping for the night. The group began

16  walking north early the next morning on July 8, 2008. The four

17  men had consumed most of their water by approximately 10:00 a.m.

18  At approximately 12:00 p.m., Camal-Chan became delirious, and

19  could not continue. Defendant told Ramirez-Valdez and Aleman-

20  Recho to wait with Camal-Chan while Defendant went ahead to look

21  for water. Camal-Chan died soon thereafter.

22         At approximately 1:00 p.m., Ramirez-Valdez and Aleman-Recho

23  began walking north in search of water and assistance. Only 30

24  minutes later, however, Aleman-Recho also became delirious and

25  could not continue walking. Ramirez-Valdez left him on the side

26  of the trail and continued in search of help.

27

28                                    3                          08CR2429-WQH

1    Ramirez-Valdez called out for help as he, too, began feeling

2    delirious.  Gerardo Salto-Rocha, charged in a separate indictment

3    in case 08CR2430-BTM, responded to Ramirez-Valdez's calls for

4    help.  The two walked together for a brief while before Salto-

5    Rocha could not continue.  Salto-Rocha informed Ramirez-Valdez

6    that a road was only a few hundred yards north.  Ramirez-Valdez

7    continued north.  He quickly came upon Defendant Cira-Ramirez and

8    the two went back to Salto-Rocha's location.  According to

9    Ramirez-Valdez, Cira-Ramirez and Salto-Rocha greeted each other

10   like they knew each other and discussed leaving their respective

11   groups behind.  Defendant and Salto-Rocha then told Ramirez-Valdez

12   to wait for them while they went east in search of water.

13   Ramirez-Valdez decided to continue north to the road, however.

14   **B.   AGENTS RESCUE SURVIVORS AND APPREHEND DEFENDANT**

15   Ramirez-Valdez made it to California State Route 2 at

16   approximately 4:00 p.m. on July 8, 2008.  Approximately one hour

17   later, United States Border Patrol Agent (USBP) Keith Busiere saw

18   Ramirez-Valdez on the side of the road, and immediately observed

19   that he was suffering from exposure.  After receiving medical

20   treatment, Ramirez-Valdez accompanied USBP agents to look for

21   other survivors.  They encountered the body of Aleman-Recho

22   approximately 15 minutes later near where Ramirez-Valdez had left

23   him.

24   //

25   //

26   //

27

28                                                    08CR2429-WQH

1    Agents returned Ramirez-Valdez to State Route 2 for

2   additional medical treatment, while other agents continued to look

3   for other survivors.  Agents soon found two survivors from Salto-

4   Rocha's group, as well as the body of Camal-Chan.

5    While agents continued to tend to the survivors on State

6   Route 2, an unidentified motorist stopped to alert agents to the

7   presence of two individuals walking along State Route 2.  Border

8   Patrol Agent Correa responded, and quickly found two individuals

9   later identified as Cira-Ramirez and Salto-Rocha.  While USBP

10  agents provided medical care to Cira-Ramirez, Ramirez-Valdez

11  identified him as the footguide who had led his group into the

12  United States and abandoned them.  Border Patrol agents took Cira-

13  Ramirez to the hospital for additional care.

14  **C.**   **STATEMENTS MADE BY DEFENDANT**

15    At approximately 5:40 a.m., on July 9, 2008, Defendant was

16  released from the hospital.  At that time, USBP agents encountered

17  him and conducted an immigration inquiry.  Defendant admitted to

18  being a Mexican citizen without legal authority to enter or reside

19  in the United States.  Agents took Defendant into custody and

20  transported him to the Murrieta, California Border Patrol Station.

21    At approximately 12:00 p.m., USBP agents advised Cira-Ramirez

22  of his <u>Miranda</u> rights, which he waived.  Defendant again stated

23  that he was a Mexican citizen and that his parents were Mexican

24  citizens, as well.  He further admitted to not having any legal

25  documents that would allow him to lawfully enter or remain in the

26  United States.  Cira-Ramirez, however, denied being a footguide.

27

28

He stated that he made arrangements with an unknown alien smuggler in Tijuana, Mexico before crossing into the United States in a group of six or seven.  Defendant stated that this was the first time he had crossed using this route. Defendant did admit to being related to Salto-Rocha by marriage.

D.    **STATEMENTS BY MATERIAL WITNESS RAMIREZ-VALDEZ**

On July 9, 2008, at approximately 11:09 a.m., USBP agents interviewed Material Witness Ramirez-Valdez.  In addition to the facts detailed above, Ramirez-Valdez stated that he was a citizen and native of Mexico and that he did not have any documents that would allow him to enter or remain in the United States lawfully. He stated that he made arrangements with an unknown smuggler in Tijuana, Mexico to be smuggled into the United States for $2,000. Ramirez-Valdez told agents that he intended to go to Los Angeles, California.

### III

### DEFENDANT'S MOTIONS

A.    **MOTION TO COMPEL DISCOVERY**

In an attempt at simplification, this memorandum will address two specific areas of discovery:  (1) items which the Government either has provided or will voluntarily provide; and (2) items demanded and discussed by Defendant which go beyond the strictures of Rule 16 and are not discoverable.

1.    **Items Which The Government Has Already Provided Or Will Voluntarily Provide**

a.    The Government will disclose to Defendant and make available for inspection, copying or photographing:  any relevant

08CR2429-WQH

1  written or recorded statements made by Defendant, or copies

2  thereof, within the possession, custody, or control of the

3  Government, the existence of which is known, or by the exercise of

4  due diligence may become known, to the attorney for the

5  Government; and that portion of any written record containing the

6  substance of any relevant oral statement made by Defendant whether

7  before or after arrest in response to interrogation by any person

8  then known to Defendant to be a Government agent.  The Government

9  will also to Defendant the substance of any other relevant oral

10  statement made by Defendant whether before or after arrest in

11  response to interrogation by any person then known by Defendant to

12  be a Government agent if the Government intends to use that

13  statement at trial.

14      b.   The Government will permit Defendant to inspect and

15  copy or photograph books, papers, documents, photographs, tangible

16  objects, buildings or places, or copies or portions thereof, which

17  are within the possession, custody or control of the Government,

18  and which are material to the preparation of Defendant's defense

19  or are intended for use by the Government as evidence during its

20  case-in-chief at trial, or were obtained from or belong to

21  Defendant;[1]

22

23  ───────────────

24      [1]   Rule 16(a)(1)(C) authorizes defendants to examine only
    those Government documents material to the preparation of their
    defense against the Government's case-in-chief.  United States v.
25  Armstrong, 116 S. Ct. 1480 (1996).  Further, Rule 16 does not
    require the disclosure by the prosecution of evidence it intends
26  to use in rebuttal.  United States v. Givens, 767 F.2d 574 (9th
    Cir. 1984), cert. denied, 474 U.S. 953 (1985).
27

28                        7                          08CR2429-WQH

1           c.     The Government will permit Defendant to inspect and

2   copy or photograph any results or reports of physical or mental

3   examinations, and of scientific tests or experiments, or copies

4   thereof, which are in the possession, custody or control of the

5   Government, the existence of which is known, or by the exercise of

6   due diligence may become known, to the attorney for the

7   Government, and which are material to the preparation of his

8   defense or are intended for use by the Government as evidence

9   during its case-in-chief at trial;[2/]

10          d.     The Government has furnished to Defendant a copy of

11  his prior criminal record, which is within its possession, custody

12  or control, the existence of which is known, or by the exercise of

13  due diligence may become known to the attorney for the Government;

14          e.     The Government will disclose the terms of all

15  agreements (or any other inducements) with cooperating witnesses,

16  if any are entered into;

17          f.     The Government may disclose the statements of

18  witnesses to be called in its case-in-chief when its trial

19  memorandum is filed;[3/]

20  --------------------

21      [2/]   The Government does not have "to disclose every single
    piece of paper that is generated internally in conjunction with
22  scientific tests." United States v. Iglesias, 881 F.2d 1519
    (9th Cir. 1989), cert. denied, 493 U.S. 1088 (1990).

23

24      [3/]   Production of these statements is governed by the Jencks
    Act and need occur only after the witness testifies on direct
    examination. United States v. Mills, 641 F.2d 785, 789-790 (9th
25  Cir.), cert. denied, 454 U.S. 902 (1981); United States v.
    Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978), cert. denied, 440
26  U.S. 921 (1979); United States v. Walk, 533 F.2d 417, 418-419 (9th
27                                            (continued...)

    08CR2429-WQH

28                                    8

1         g.    The Government will disclose any record of prior

2    criminal convictions that could be used to impeach a Government

3    witness prior to any such witness' testimony;

4         h.    The Government will disclose in advance of trial

5    the general nature of other crimes, wrongs, or acts of Defendant

6    that it intends to introduce at trial pursuant to Rule 404(b) of

7    the Federal Rules of Evidence;

8         i.    The Government acknowledges and recognizes its

9    continuing obligation to disclose exculpatory evidence and

10   discovery as required by Brady v. Maryland, 373 U.S. 83 (1963),

11   Giglio v. United States, 405 U.S. 150 (1972), Jencks and Rules 12

12   and 16 of the Federal Rules of Criminal Procedure, and will abide

13   by their dictates.[4/]

14   _____

15   (...continued)
    Cir. 1975).    For Jencks Act purposes, the Government has no

16   obligation to provide the defense with statements in the
    possession of a state agency.  United States v. Durham, 941 F.2d

17   858 (9th Cir. 1991).  Prior trial testimony does not fall within
    the scope of the Jencks Act.  United States v. Isigro, 974 F.2d

18   1091, 1095 (9th Cir. 1992).  Further, an agent's recorded radio
    transmissions made during surveillance are not discoverable under

19   the Jencks Act.  United States v. Bobadilla-Lopez, 954 F.2d 519
    (9th Cir. 1992).  The Government will provide the grand jury

20   transcripts of witnesses who have testified before the grand jury
    if said testimony relates to the subject matter of their trial

21   testimony.  Finally, the Government reserves the right to withhold
    the statement of any particular witness it deems necessary until

22   after the witness testifies.

23       [4/]    Brady v. Maryland requires the Government to produce all

24   evidence that is material to either guilt or punishment.  Brady v.
    Maryland, 373 U.S. 83 (1963).  The Government's failure to provide

25   the information required by Brady is constitutional error only if
    the information is material, that is, only if there is a

26   reasonable probability that the result of the proceeding would

27                                             (continued...)

                                                        08CR2429-WQH

28

2.    **<u>Items Which Go Beyond The Strictures Of Rule 16</u>**

     a.    **The Requests By The Defendants For Specific
<u>Brady</u> Information Or General Rule 16
<u>Discovery Should Be Denied</u>**

Defendant requests that the Government disclose all evidence favorable to him, which tends to exculpate him, or which may be relevant to any possible defense or contention they might assert.

It is well-settled that prior to trial, the Government must provide a defendant in a criminal case with evidence that is both favorable to the accused and material to guilt or punishment. <u>Pennsylvania v. Richie</u>, 480 U.S. 39, 57 (1987); <u>United States v. Agurs</u>, 427 U.S. 97 (1976); <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).    As the Court explained in <u>United States v. Agurs</u>, 427 U.S. 97, 104 (1976), "a fair analysis of the holding in <u>Brady</u> indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial."    Thus, under <u>Brady</u>, "evidence is material <u>only</u> if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."    <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985) (emphasis added).    A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

---

[4]/(...continued)
have been different had the information been disclosed. <u>Kyles v. Whitley</u>, 115 S. Ct. 1555 (1995).  However, neither <u>Brady</u> nor Rule 16 require the Government to disclose inculpatory information to the defense.  <u>United States v. Arias-Villanueva</u>, 998 F.2d 1491 (9th Cir. 1993).

08CR2429-WQH

1  <u>Pennsylvania v. Richie</u>, 480 U.S. at 57 (quoting <u>United States v.</u>

2  <u>Bagley</u>, 473 U.S. at 682).

3      The Supreme Court has repeatedly held that the <u>Brady</u> rule is

4  not a rule of discovery; rather, it is a rule of fairness and is

5  based upon the requirement of due process.    <u>United States v.</u>

6  <u>Bagley</u>, 473 U.S. at 675, n. 6; <u>Weatherford v. Bursey</u>, 429 U.S. at

7  559; <u>United States v. Agurs</u>, 427 U.S. at 108.  The Supreme Court's

8  analysis of the limited scope and purpose of the <u>Brady</u> rule, as

9  set forth in the <u>Bagley</u> opinion, is worth quoting at length:

10         Its purpose is not to displace the adversary system as the
           primary means by which truth is uncovered, but to ensure that
11         a miscarriage of justice does not occur. [footnote omitted].
           Thus, the prosecutor is not required to deliver his entire
12         file to defense counsel,[5] but only to disclose evidence
           favorable to the accused that, if suppressed, would deprive
13         the defendant of a fair trial:  "For unless the omission
           deprived the defendant of a fair trial, there was no
14         constitutional violation requiring that the verdict be set
           aside; and **absent a constitutional violation, there was no
15         breach of the prosecutor's constitutional duty to disclose .
           . . but to reiterate a critical point, the prosecutor will
16         not have violated his constitutional duty of disclosure
           unless his omission is of sufficient significance to result
17         in the denial of the defendant's right to a fair trial."**

18  <u>United States v. Bagley</u>, 473 U.S. at 675 (quoting <u>United States v.</u>

19  <u>Agurs</u>, 427 U.S. at 108) (emphasis added); <u>see also Pennsylvania v.</u>

20

21         [5]    See <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976);
22  <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972). <u>See also</u> <u>California
    v. Trombetta</u>, 467 U.S. 479, 488, n. 8 (1984).  An interpretation
23  of <u>Brady</u> to create a broad, constitutionally required right of
    discovery "would entirely alter the character and balance of our
24  present system of criminal justice." <u>Giles v. Maryland</u>, 386 U.S.
    66, 117 (1967) (Harlan, J., dissenting).  Furthermore, a rule that
25  the prosecutor commits error by any failure to disclose evidence
    favorable to the accused, no matter how insignificant, would
26  impose an impossible burden on the prosecutor and would undermine
    the interest in the finality of judgements.
27
                                                          08CR2429-WQH
28                              11

1  <u>Richie</u>, 480 U.S. at 59 ("A defendant's right to discover

2  exculpatory evidence does not include the unsupervised authority

3  to search through the Commonwealth's files.").

4        b.    **Defendants' Motion For Disclosure Of Witness Information Should Be Denied Except As Is Agreed To By The Government**

5

6        Defendant seeks numerous records and information pertaining

7  to potential Government witnesses.  Regarding these individuals,

8  the Government will provide Defendant with the following items

9  prior to any such individual's trial testimony:

10              (1)  The terms of all agreements (or any other

11  inducements) it has made with cooperating witnesses, if they are

12  entered into;

13              (2)  All relevant exculpatory evidence concerning

14  the credibility or bias of Government witnesses as mandated by

15  law; and,

16              (3)  Any record of prior criminal convictions that

17  could be used to impeach a Government witness.

18        The Government opposes disclosure of rap sheet information of

19  any Government witness prior to trial because of the prohibition

20  contained in the Jencks Act.  See <u>United States v. Taylor</u>,

21  542 F.2d 1023, 1026 (8th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1074

22  (1977).  Furthermore, any uncharged prior misconduct attributable

23  to Government witnesses, all promises made to and consideration

24  given to witnesses by the Government, and all threats of

25  prosecution made to witnesses by the Government will be disclosed

26

27

28                                          08CR2429-WQH

1    if required by the doctrine of <u>Brady v. Maryland</u>, 373 U.S. 83

2    (1963) and <u>Giglio v. United States</u>, 450 U.S. 150 (1972).

3                    c.    **The Rough Notes Of Our Agents**

4         Although the Government has no objection to the preservation

5    of agents' handwritten notes, we object to their production at

6    this time.   Further, the Government objects to any pretrial

7    hearing concerning the production of rough notes.  If during any

8    evidentiary proceeding, certain rough notes become relevant, these

9    notes will be made available.

10        Prior production of these notes is not necessary because they

11   are not "statements" within the meaning of the Jencks Act unless

12   they comprise both a substantially verbatim narrative of a

13   witness' assertions <u>and</u> they have been approved or adopted by the

14   witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir.

15   1980); <u>see also</u> <u>United States v. Kaiser</u>, 660 F.2d 724, 731-32

16   (9th Cir. 1981); <u>United States v. Griffin</u>, 659 F.2d 932, 936-38

17   (9th Cir. 1981).

18                d.    **Government Reports, Summaries, And Memoranda**

19        Rule 16, in pertinent part, provides:

20        [T]his rule does not authorize the discovery or
          inspection of reports, memoranda, or other internal
21        government documents made by the attorney for the
          government or <u>other government agent in connection with</u>
22        <u>the investigating or prosecuting of the case</u>.

23   This subsection exempts from disclosure documents prepared by

24   government attorneys and agents that would otherwise be

25   discoverable under Rule 16.  <u>United States v. Fort</u>, 472 F.3d 1106,

26   1110 & n.2 (9th Cir. 2007).

27

28                                          08CR2429-WQH

                                 13

1    The Government, as expressed previously, recognizes and

2    embraces its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S.

3    83 (1963), <u>Giglio v. United States</u>, 450 U.S. 150 (1972), Rule 16,

4    and the Jencks Act.[6/]  We shall not, however, turn over internal

5    memoranda or reports which are properly regarded as work product

6    exempted from pretrial disclosure.[7/]  Such disclosure is supported

7    neither by the Rules of Evidence nor case law and could compromise

8    other areas of investigation still being pursued.

        **e.   Defendants Are Not Entitled To Addresses
Of Government Witnesses**

Defendant requests the name and last known address of each prospective Government witness.  While the Government <u>may</u> supply a tentative witness list with its trial memorandum, it objects to providing home addresses.  <u>See</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685, 688 (9th Cir. 1980), and <u>United States v. Conder</u>, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses).  A request for the home addresses of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list of the witnesses it expects to call at trial.  <u>United States v.</u>

---

    6/   Summaries of witness interviews conducted by Government agents (DEA 6, FBI 302) are not Jencks Act statements.  <u>United States v. Claiborne</u>, 765 F.2d 784, 801 (9th Cir. 1985).  The production of witness interview is addressed in more detail below.

    7/   The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

08CR2429-WQH

Thompson, 493 F.2d 305, 309 (9th Cir.), cert. denied, 419 U.S. 835

(1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir.

1969).[8/]

The Ninth Circuit addressed this issue in United States v.

Jones, 612 F.2d 453 (9th Cir. 1979), cert. denied, 445 U.S. 966

(1980). In Jones, the court made it clear that, absent a showing

of necessity by the defense, there should be no pretrial

disclosure of the identity of Government witnesses. Id. at 455.

Several other Ninth Circuit cases have reached the same

conclusion. See, e.g., United States v. Armstrong, 621 F.2d 951,

1954 (9th Cir. 1980); United States v. Sukumolachan, 610 F.2d at

687; United States v. Paseur, 501 F.2d 966, 972 (9th Cir. 1974)

("A defendant is not entitled as a matter of right to the name and

address of any witness.").

### f.   Motion Pursuant To Rule 12(d)

Defendant is hereby notified that the Government intends to

use in its case-in-chief at trial all evidence which Defendant is

entitled to discover under Rule 16, subject to any relevant

limitations prescribed in Rule 16.

---

[8/]    Even in a capital case, the defendant is only entitled
to receive a list of witnesses three days prior to commencement of
trial. 18 U.S.C. § 3432. See also United States v. Richter, 488
F.2d 170 (9th Cir. 1973)(holding that defendant must make an
affirmative showing as to need and reasonableness of such
discovery). Likewise, agreements with witnesses need not be
turned over prior to the testimony of the witness, United States
v. Rinn, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation
to turn over the criminal records of all witnesses. United States
v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v.
Egger, 509 F.2d 745 (9th Cir.), cert. denied, 423 U.S. 842 (1975);
United States v. Cosby, 500 F.2d 405 (9th Cir. 1974).

08CR2429-WQH

15

**g.    Defendant's Motion For Disclosure Of Oral Statements Made To Non-Government Witnesses Should Be Denied**

Defendants are not entitled to discovery of oral statements made by them to persons who were not - at the time such statements were made - known by the defendants to be Government agents.  The plain language of Rule 16 supports this position.  Rule 16 unambiguously states that defendants are entitled to "written and recorded" statements made by them.  The rule limits discovery of oral statements to "that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a Government agent," and "the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a Government agent if the Government intends to use that statement at trial."  The statutory language clearly means that oral statements are discoverable only in very limited circumstances, and then, only when made to a known Government agent.

**h.    Personnel Files Of Federal Agents**

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality . . . ."  United States v. Cadet, 727 F.2d at 1467-68.  Further,

08CR2429-WQH

if counsel for the United States is uncertain about the materiality of the information within its possession, the material will be submitted to the court for in-camera inspection and review.   In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.   In <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the Assistant U.S. Attorney assigned to the prosecution of the case has no duty to <u>personally</u> review the personnel files of federal law enforcement witnesses.   In <u>Jennings</u>, the Ninth Circuit found that the present Department of Justice procedures providing for a review of federal law enforcement witness personnel files by the agency maintaining them is sufficient compliance with <u>Henthorn</u>.   <u>Jennings</u>, 960 F.2d at 1492.   In this case, the Government will comply with the procedures as set forth in <u>Jennings</u>.

Finally, the Government has no duty to examine the personnel files of state and local officers because they are not within the possession, custody or control of the Federal Government.   <u>United States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

### i.   **Reports Of Witness Interviews**

Defendant has requested the production of all reports generated in connection with witness interviews.   To date, the Government does not have any reports regarding witness interviews or otherwise that have not been turned over to Defendant. However, to the extent that such additional reports regarding

08CR2429-WQH

witness interviews are generated, the information sought by Defendant is not subject to discovery under the Jencks Act, 18 U.S.C., Section 3500.  In <u>Jencks v. United States</u>, 353 U.S. 657 (1957), the Supreme Court held that a criminal defendant had a due process right to inspect, for impeachment purposes, statements which had been made to government agents by government witnesses. Such statements were to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony, and if a demand had been made for specific statements of the witness.  <u>Id</u>. at 1013-15.  The Jencks Act, 18 U.S.C., Section 3500, was enacted in response to the Jencks decision.  As the Supreme Court stated in an early interpretation of the Jencks Act:

> Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative process and thereby injure the national interest, but it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations.  The committee reports of the Houses and the floor debates clearly manifest the intention to avoid these dangers by restricting the production to those statements defined in the bill.

<u>Palermo v. United States</u>, 360 U.S. 343, 350 (1959).  Having examined the legislative history and intent behind enactment of the Jencks Act, the Court concluded, "[t]he purpose of the Act, its fair reading and its overwhelming legislative history compel us to hold that statements of a government witness made to an

08CR2429-WQH

18

agent of the government which cannot be produced under the terms

of 18 U.S.C. § 3500, cannot be produced at all."

Reports generated in connection with a witness's interview session are only subject to production under the Jencks Act if the witness signed the report, or otherwise adopted or approved the contents of the report. See 18 U.S.C. § 3500(e)(1); see also United States v. Miller, 771 F.2d 1219, 1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witnesses' oral statements."); United States v. Friedman, 593 F.2d 109, 120 (9th Cir. 1979) (an interview report that contains a summary of a witness' statements is not subject to discovery under the Jencks Act); United States v. Augenblick, 393 U.S. 248, 354-44 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). As recognized by the Supreme Court, "the [Jencks Act] was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital." Id. The defendants should not be allowed access to reports which

08CR2429-WQH

1  they cannot properly use to cross-examine the Government's
2  witnesses.

3         **j.   Expert Witnesses**

4         The Government will disclose to Defendant the name,
5  qualifications, and a written summary of testimony of any expert
6  the Government intends to use during its case-in-chief at trial
7  pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to
8  the scheduled trial date.

9         **k.   Other Discovery Requests**

10        To the extent that the above does not answer all of
11 Defendant's discovery requests, the Government opposes the motions
12 on the grounds that there is no authority requiring us to provide
13 such material.

14 **B.   MOTION TO DISMISS INDICTMENT RE AIDING AND ABETTING**

15        Defendant argues that the Court should dismiss the Indictment
16 or, alternatively, preclude the Government from proceeding under
17 an aiding and abetting theory.  Defendant argues that the
18 Indictment is defective because it fails to charge him with the
19 necessary *mens rea* for aiding and abetting.  These contentions
20 should be rejected.

21        **1.   Aiding and abetting mens rea**

22        An indictment need only contain those facts and elements so
23 that the defendant may prepare a defense and invoke the Double
24 Jeopardy clause when appropriate.  See United States v. Gondinez-
25 Rabadan, 289 F.3d 630, 634 (9th Cir. 2002).  An indictment that
26 sets forth the charged offense in the words of the statute itself

08CR2429-WQH

is generally sufficient. <u>United States v. Johnson</u>, 804 F.2d 1078, 1084 (9th Cir. 1986 ).  An indictment that puts a defendant on notice of the elements of the offense, even if only by citation to the statutory provision involved, is also sufficient.  <u>United States v. Gelzer</u>, 50 F.3d 1133, 1138 (2d Cir. 1995); <u>United States v. Oakie</u>, 12 F.3d 1436, 1440-41 (8th Cir. 1993); <u>United States v. Blackburn</u>, 9 F.3d 353, 357 (5th Cir. 1993).

The Indictment in this case tracks the applicable statutory language, provides citations to the applicable statutes at issue, and more than adequately apprises Defendant of the crimes charged. Contrary to Defendant's assertions, count 1 charging Defendant with bringing in an illegal alien for financial gain and aiding and abetting in that crime is not defective. <u>See</u> <u>United States v. Ramirez-Martinez</u>, 273 F.3d 903, 911 (9th Cir. 2001) (Indictment charging a defendant with violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 was not defective); <u>United States v. Anqwin</u>, 271 F.3d 786, 800 (9th Cir. 2001) (affirming decision to deny the defendant's motion to dismiss the count charging violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2), <u>cert. denied</u>, 535 U.S. 966 (2002); <u>Accord</u> <u>United States v. Lopez</u>, 484 F.3d 1186, 1199-1200 (9th Cir. 2007) (aiding and abetting liability "cannot be rejected as a matter of law"; even one who does not physically transport aliens across the border may

08CR2429-WQH

be held criminally liable for aiding and abetting a "brings to" offense under certain circumstances).[9]

Defendant's reliance on United States v. Du Bo, 186 F.3d 1177 (9th Cir. 1999) is misplaced. In Du Bo, the defendant's indictment failed to include a mens rea because the indictment only cited to the Hobbs Act. Id. at 1179. Here, unlike Du Bo, the Indictment includes the requisite mens rea. An essential element of aiding and abetting liability is "that the accused had the requisite intent of the underlying substantive offense." United States v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997); see also United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) (Given that "the intent regarding the underlying substantive offense required to convict a defendant as an aider and abettor is the same intent necessary to convict him as a principal," the intent element was not missing from the original indictment.").

Furthermore, "aiding and abetting is implied in every federal indictment for a substantive offense." See, e.g., United States v. Armstrong, 909 F.2d 1238, 1241 (9th Cir. 1990). Aiding and abetting is not a distinct offense from the underlying substantive crime. United States v. Garcia, 400 F.3d 816, 820 (9th Cir. 2005) ("Aiding and abetting is simply one means of committing a single crime."). "Every indictment for a federal offense charges the

---

[9] In this case, Defendant, a foot guide who led the group into the United States was the initial transporter and he had not yet dropped the aliens off at a location within the United States. Hence, the crime was not yet complete and aiding and abetting is properly charged. Lopez, 483 F.3d at 1199-1200.

08CR2429-WQH

1  defendant as a principal and as an aider and abettor; thus a count
2  for aiding and abetting is unnecessary." <u>United States v. Cannon</u>,
3  993 F.2d 1439, 1442 (9th Cir. 1993). Accordingly, the Government
4  is free to proceed on an aiding and abetting theory.

5          **2.  <u>Knowledge</u>**

6          Count One of the Indictment alleges that Defendant acted
7  "with the intent to violate the immigration laws of the United
8  States . . ." This allegation adequately alleges the requisite
9  mens rea for a violation of § 1324(a)(1)(A)(i). <u>See</u> <u>United States</u>
10 <u>v. Nguyen</u>, 73 F.3d 887, 893 (9th Cir. 1995) ("to convict a person
11 of violating section 1324(a)(1)(A), the government must show that
12 the defendant acted with criminal intent"). Neither <u>Nguyen</u> nor
13 the Ninth Circuit model jury instructions impose the additional
14 scienter requirement proposed by Defendant – that he know the
15 alien was brought to the United States at a place other than a
16 designated port of entry. <u>See</u> Ninth Circuit Model Jury
17 Instruction No. 9.1. To the contrary, the Government may
18 establish a violation of § 1324(a)(1)(A) by proving that Defendant
19 acted with the intent to violate the immigration laws of the
20 United States. The Indictment so alleges, and there is no basis
21 to dismiss Count One on this ground.

22 **C.    <u>SECTION 1324 IS NOT UNCONSTITUTIONAL UNDER APPRENDI</u>**

23         As Defendant recognizes, controlling Ninth Circuit law
24 forecloses his argument that § 1324 is unconstitutional under
25 <u>Apprendi</u> because the trial judge determines the statutory maximum
26 penalties for such an offense rather than the jury. <u>See</u> <u>United</u>
27
28                                    23

States v. Matus-Leva, 311 F.3d 1214, 1217 (9th Cir. 2002)("No genuine issue is presented under Apprendi or its progeny."). As the Ninth Circuit expressly held there, "[t]his argument is wholly without merit." Id.

The Ninth Circuit explained that the circumstances in Matus-Leva, which also involved an § 1324 "resulting in death" indictment, "do[] not come within the literal terms or the reasoning of Apprendi, because this case does not involve sentencing factors to be decided by a judge that increase the penalty beyond the statutory maximum." Id.

**D.    THE COURT NEED NOT APPLY A MENS REA TO THE SENTENCING FACTORS**

As Defendant also recognizes, his argument that the *mens rea* requirements for the various § 1324 offenses must attach to the sentencing factors is also foreclosed by United States v. Matus-Leva, 311 F.3d at 1218-19 (9th Cir. 2002) ("Matus-Leva argues that the 'resulting in . . . death'. . . provision has no explicit *mens rea* requirement, and so it is void for vagueness because it could be applied to a defendant even if the death had nothing to do with the smuggling.   That argument lacks merit.").   In fact, as demonstrated by the analysis in United States v. Nguyen, 73 F.3d 887, 894 (9th Cir. 1995), the Ninth Circuit explained that section 1324 does "have a *mens rea* requirement, namely that the alleged smuggler intend to violate the immigration laws." Id. at 1219. Thus, the Ninth Circuit rejected this challenge.

//

//

08CR2429-WQH

24

**E.    MOTION TO DISMISS "RESULTING IN DEATH" CHARGE**

    **1.    The Absence of Mens Rea Attached to the Death Resulting Factor Does Not Render the Statute Unconstitutionally Disproportionate**

Defendant claims that, if the court does not impose a mens rea requirement, § 1324(a)(1)(B)(iv) is defective because it authorizes the death penalty for conduct that does not satisfy the bare minimum mens rea requirement for imposition of the death penalty – "reckless indifference to human life in the course of committing a violent felony." [Def. Mem. at 14.]

In relevant part the portion of § 1324 that Defendant attacks as unconstitutionally disproportionate reads as follows:

> (B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs –
> .    .    .    .
>
> > (iv) in the case of a violation of subparagraph (A)(I) . . . resulting in the death of any person, be punished by death or imprisoned for any term of years or for life, fined under Title 18, or both.

Id.  This facial constitutional attack on the subparagraph is based on the premise that since the death penalty could be imposed, and since the subparagraph does not narrow the class of persons eligible for the death penalty (i.e., those who at a minimum act with "reckless indifference to human life in the course of committing a violent felony"), the overreaching of the subparagraph makes its disproportionality a constitutional defect.

Defendant's complaint appears to be that the statute gives no guidance as to who would be eligible for the death penalty because: (1) "as the 'least culpable mental state the Supreme Court has held death eligible is reckless indifference to human

08CR2429-WQH

1    life in commission of a felony.'" (Emphasis in original) (Def.

2    Mem. at 15 [quoting United States v. Cheely, 36 F.3d 1439 and n.9

3    (9th Cir. 1994))]; and (2) the statute does not "genuinely narrow

4    the class of persons eligible for the death penalty." Id.

5        First, this argument is premature because the United States

6    has yet to inform the Court and the parties whether the death

7    penalty will be sought in this case.  The Court need not rule on

8    the constitutionality of the statute unless and until the United

9    States gives notice that it will seek the death penalty against

10   Defendant.  Prior to such notice, a determination whether the

11   "resulting in death" provision of § 1324 would be tantamount to an

12   advisory opinion.

13       Second, while if it is true that § 1324(a)(1)(B)(iv) does not

14   indicate the criteria as to who would be eligible for the death

15   penalty, it does not need to.  All federal death penalty eligible

16   criteria are contained in the Federal Death Penalty Act, 18 U.S.C.

17   § § 3591 et. seq.  See United States v. Fernandez, 231 F.3d 1240,

18   1243 (9th Cir. 2000).  In fact, the Fifth Circuit has held, "[t]he

19   FDPA provides sufficient safeguards to prevent the arbitrary

20   imposition of the death penalty." United States v. Jones, 132

21   F.3d 232, 241 (5th Cir. 1998)(Defendant convicted of kidnaping with

22   death resulting, in violation of 18 U.S.C. § 1201.)  That is

23   because "[s]ection 3591(a) codifies the command in Enmund, 458

24   U.S. at 797, 102 S.Ct. 3368, and Tison, 481 U.S. at 157, 107 S.Ct.

25   1676, to limit the imposition of the death penalty to those

26   murderers who both undertake felony participation and demonstrate

27

28

08CR2429-WQH

at least reckless indifference to human life." <u>United States v. Webster</u>, 162 F.3d 308, 355 (5th Cir. 1998).

### 2.    The Absence of Mens Rea Does Not Render the Statute Unconstitutionally Vague

As Defendant again recognizes, Ninth Circuit law forecloses his argument that § 1324 is unconstitutionally vague absent a superimposed mens rea element. <u>See Matus-Leva</u>, 311 F.3d at 1219. In fact, a plain reading of the statute demonstrates that the only prerequisite to the application of the statute is for an alien to die as a result of a violation of the statute. Surely, an "ordinary person" who reads this statute and then decides to make money by guiding a group of undocumented aliens through treacherous terrain from Mexico into the United States and into a vehicle that crashes killing one or more occupants would not be surprised to learn that he or she was subject to the penalties of this provision. This portion of the statute is hardly, "a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." <u>Kolender v. Lawson</u>, 461 U.S. 352 (1983) (quoting <u>Smith v. Goquen</u>, 415 U.S. 566, 575 (1974)). First, "[w]here a law at issue does not implicate First Amendment rights, it may be challenged for vagueness <u>only</u> as applied, <u>unless</u> the enactment is impermissibly vague in all of its applications. <u>Easyriders Foundation F.I.G.H.T. v. Hannigan</u>, 92 F.3d 1486, 1493-94 (9th Cir. 1997). Thus, Defendant may only challenge § 1324 only as applied or if it is impermissibly vague in all its applications. <u>Id.</u> The Ninth Circuit has summarily rejected arguments that § 1324 is vague on numerous occasions.

08CR2429-WQH

1    See, e.g., United States v. Moreno, 561 F.2d 1321, 1322 (9th Cir.

2    1977); United States v. Gonzalez-Hernandez, 534 F.2d 1353, 1354

3    (9th Cir. 1976).

4        Here, the United States alleges that Defendant was engaged in

5    alien smuggling across the United States border which actively

6    resulted in death.  Section 1324 clearly provides notice that this

7    activity is prohibited and will result in specific penalties, and

8    a  sufficient  guideline  that  does  not  encourage  arbitrary

9    enforcement by law enforcement officials.  Accordingly, section

10   1324(a)(1)(B)(iv) is not unconstitutionally vague, and Defendant

11   is entitled to no relief.

12   **F.    MOTION TO DISMISS BECAUSE CONGRESS DID NOT INTEND AIDING AND
        ABETTING LIABILITY UNDER § 1324**

13

14       Defendant concedes that United States v. Angwin, 271 F.3d

15   786, 800-804 (9th Cir. 2001), forecloses this argument.

16   **G.    MOTION TO BIFURCATE TRIAL**

17       Defendant claims that the court should bifurcate the trial of

18   the "resulting in death" sentencing factor from the remaining

19   issues in the case.  He moves the court for this relief pursuant

20   to Fed. R. Crim. P. 8 and 14, which read in pertinent part as

21   follows:

22       Rule 8:

23       (a) Two or more offenses may be charged in the same
         indictment. . . if the offenses charged, . . . are based
24       on the same act or transaction.

25   //

26   //

27

28                                    28

08CR2429-WQH

Rule 14:

> If it appears that a <u>defendant</u> . . . is <u>prejudiced</u> by a joinder of offenses. . ., the court <u>may</u> order . . . separate trials of counts, . . . or provide whatever other relief justice requires.

(Emphasis added.)

Defendant bears the burden of showing manifest prejudice. In fact, the best that he can offer is the discussion found in a footnote in the concurring opinion of Justice Thomas in <u>Apprendi</u>. That footnote reads as follows:

> In addition, it has been common practice to address this concern [introduction of prior conviction at trial] by permitting the defendant to stipulate to the prior conviction, in which case the charge of the prior conviction is not read to the jury, or , if the defendant decides not to stipulate, to bifurcate the trial, with the jury only considering the prior conviction after it has reached a guilty verdict on the core crime.

530 U.S. at 521 n.10 (citations omitted).  First, according to Justice Thomas, this is a "practice," but it its not required. Second, the Ninth Circuit has, in fact, found the scenario addressed in the footnote does not require severance/bifurcation, and a district court does not abuse its discretion when it refuses to so order.  <u>United States v. Nguyen</u>, 88 F.3d 812, 818 (9th Cir. 1996).  Moreover, the interests of judicial economy in this case are significant given the overlap in witnesses and testimony in the "resulting in death" counts and the other counts under 8 U.S.C. § 1324.  <u>See</u> <u>Matus-Leva</u>, 311 F.3d at 1217 ("Bifurcation of proceeding relating to death of the aliens he guided would have been judicially inefficient and was not necessary to give Matus-Leva a fair trial.").

08CR2429-WQH

**H.    MOTION TO SUPPRESS STATEMENTS AND EVIDENCE**

    **1.    Law enforcement agents complied with Miranda, and Defendant's statements were voluntary**

A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights and was not elicited by improper coercion. <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. <u>See</u> <u>id.</u> (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); <u>cf.</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted). While it is possible for a defendant to be in such a poor mental or physical condition that he cannot rationally waive his rights (and misconduct can be inferred based on police

knowledge of such condition, <u>Connelly</u>, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice. See <u>United States v. Kelley</u>, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

Here, the undisputed facts demonstrate that Defendant knowingly and voluntarily waived his <u>Miranda</u> rights. Following his apprehension on July 8, 2008, Defendant was determined to be suffering from mild dehydration and was taken to Palomar Hospital. Defendant was released from the hospital on the morning of July 9, 2008 and was taken into custody by Border Patrol at that time. Agents advised Defendant of his <u>Miranda</u> rights. Defendant acknowledged that he understood his rights, and he agreed to answer questions without the presence of an attorney. Simply put, law enforcement agents complied with <u>Miranda</u>, and Defendant fails to allege with any specificity that either the <u>Miranda</u> advisal or his ensuing waiver was improper.

The totality of circumstances further demonstrates that Defendant's post-arrest statements were voluntary. Significantly, Defendant has not submitted a declaration, and there is no evidence before the Court that he was subjected to coercive police activity. See, <u>e.g.</u>, <u>Clark v. Murphy</u>, 331 F.3d 1062, 1073 (9th Cir. 2003) (upholding admission of statements where defendant was questioned over a five-hour period in a small room without toilet or water facilities). Based on the Government's proffer, the

08CR2429-WQH

1    Court can conclude by a preponderance of the evidence that

2    Defendant knowingly and voluntarily waived his <u>Miranda</u> rights and

3    that his subsequent statements were made voluntarily.

4        **2.    <u>Defendant is not entitled to an evidentiary hearing</u>**

5        "An evidentiary hearing on a motion to suppress need be held

6    only when the moving papers allege facts with sufficient

7    definiteness, clarity, and specificity to enable the trial court

8    to conclude that contested issues of fact exist." <u>United States</u>

9    <u>v. Howell</u>, 231 F.3d 616, 620 (9th Cir. 2000) (citation omitted).

10   Local Criminal Rule 47.1(g)(1) provides, in relevant part:

11       Criminal motions requiring predicate factual findings

12       shall be supported by declaration(s) . . . . The Court

13       need not grant an evidentiary hearing where either party

14       fails to properly support its motion or opposition.

15   A District Court may properly deny a request for an evidentiary

16   hearing on a motion to suppress evidence where the defendant does

17   not submit a declaration pursuant to a local rule. <u>United States</u>

18   <u>v. Wardlow</u>, 951 F.2d 1115, 1116 (9th Cir. 1991). <u>See also</u> <u>United</u>

19   <u>States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he

20   defendant, in his motion to suppress, failed to dispute any

21   material fact in the government's proffer.    In these

22   circumstances, the district court was not required to hold an

23   evidentiary hearing."); <u>United States v. Moran-Garcia</u>, 783 F.

24   Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing

25   indefinite and unsworn allegations held insufficient to require

26

27

28                                                        08CR2429-WQH

                                32

1  evidentiary   hearing   on   defendant's   motion   to   suppress

2  statements).[10]

3      Here, Defendant's election not to submit a declaration is a

4  plain violation of Local Rule 47.1(g).  Further, the absence of a

5  declaration prevents this Court from making a finding that

6  disputed issues of fact exist in the first instance.  Howell, 231

7  F.3d at 620.  As such, the Court should deny Defendant's motion

8  without an evidentiary hearing.  Batiste, 868 F.2d at 1092

9  (Government proffer alone is adequate to defeat a motion to

10 suppress where the defense fails to adduce specific and material

11 disputed facts).

12 I.   **MOTION TO SUPPRESS IDENTIFICATION TESTIMONY**

13      1.   **The identification procedure was not impermissibly
             suggestive**

15           a.   **Legal standards**

16      Suppression of an identification "is appropriate only where

17 the photospread was so impermissibly suggestive as to give rise to

18 a very substantial likelihood of irreparable misidentification."

19 United States v. Beck, 418 F.3d 1008, 1012 (9th Cir. 2005)

20 (citation omitted) (holding six-pack photospread not impermissibly

21 suggestive).  "To determine whether an identification procedure is

22 impermissibly suggestive, we review the totality of the

23 circumstances."  United States v. Jones, 84 F.3d 1206, 1209 (9th

25      [10] No rights are infringed by the requirement of such a
declaration because the United States may not use the declaration
26 at trial over the defendant's objection.  Batiste, 868 F.2d at
1092.

08CR2429-WQH

28                              33

1    Cir. 1996).  If the procedure is <u>not</u> impermissibly suggestive, the

2    inquiry ends.  <u>United States v. Bagley</u>, 772 F.2d 482, 492 (9th Cir.

3    1985).    On  the  other  hand,  if  the  procedure  <u>is</u>  impermissibly

4    suggestive, the court must determine whether the identification

5    testimony nevertheless is admissible because the identification is

6    sufficiently reliable under the totality of the circumstances.

7    <u>Id</u>.

8             **b.    <u>The photospread was not impermissibly suggestive</u>**

9         Defendant  contends  in  conclusory  fashion  that  the  six-pack

10   photospread was impermissibly suggestive.  He is wrong because the

11   photospread included photos of six young, Hispanic males in the

12   same  age  range.    The  Ninth  Circuit  has  repeatedly  rejected

13   challenges to similar photospreads, even where those photospreads

14   were more suggestive that the one at issue here.  <u>See</u>, <u>e.g.</u>, <u>Beck</u>,

15   418 F.3d at 1012 (photospread not impermissibly suggestive where

16   "all six of the pictures are of Caucasian males in the same age

17   range, with similar skin, eye and hair coloring"); <u>United States</u>

18   <u>v. Burdeau</u>, 168 F.3d 352, 357-58 (9th Cir. 1999) (rejecting

19   argument  that  photo  array  was  impermissibly  suggestive  because

20   defendant's picture was placed in the center of the array, was

21   darker than the rest, and was the only one in which the eyes were

22   closed.); <u>United States v. Carbajal</u>, 956 F.2d 924, 929 (9th Cir.

23   1992)  (photospread  not  impermissibly  suggestive  where  pictures

24   depicted six Hispanic males in same age range); <u>United States v.</u>

25   <u>Hamilton</u>, 792 F.2d 837, 840-41 (9th Cir. 1986) (photospread not

26   unduly suggestive even though two of six photos were of the same

27

28                                    34

08CR2429-WQH

1    person and two others were nearly identical); United States v.

2    Johnson, 820 F.2d 1065 (9th Cir. 1987) (upholding photospread

3    identification even though defendant was the only person over the

4    age of 30, two other persons were noticeably more clean shaven,

5    and defendant's photo was hazier than other photos).

6        **2.    The identification was reliable in any event**

7        Because the identification procedures employed in this case

8    were not impermissibly suggestive, the Court need not separately

9    determine whether the identification was reliable.  Bagley, 772

10   F.2d at 492.    But even where a court finds that a pretrial

11   procedure is impermissibly suggestive, "automatic exclusion of

12   identification testimony is not required."  Id.  "If under the

13   totality of the circumstances the identification is sufficiently

14   reliable, identification testimony may properly be allowed into

15   evidence even if the identification was made pursuant to an

16   unnecessarily suggestive procedure."  Id.

17       "The factors we consider in evaluating the likelihood of

18   misidentification include: (1) the witness's opportunity to view

19   the criminal at the time of the crime; (2) the witness's degree of

20   attention; (3) the accuracy of the witness's prior description of

21   the criminal; (4) the level of certainty demonstrated by the

22   witness at the confrontation; and (5) the length of time between

23   the crime and the confrontation."  Jones, 84 F.3d at 1209-10

24   (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).  See also

25   United States v. Dring, 930 F.2d 687, 692-93 (9th Cir. 1991) (where

26   witnesses were shown a single photo of defendant prior to trial,

27

28                                    35

1    district court properly found in-court identifications reliable

2    and admissible).

3           **a.**    **Ramirez-Valdez' opportunity to view Defendant**

4       It is apparent from both Ramirez' statements as well as

5    Defendant's own admissions that they each had the opportunity to

6    view the other over a period of time of <u>at least</u> 24 hours while

7    their 4-person group walked from Mexico into the United States.

8    Given this extended period of time and Ramirez-Valdez' close

9    proximity to Defendant, there can be no reasonable dispute that

10    Ramirez-Valdez had ample opportunity to view Defendant.   <u>See</u>,

11    <u>e.g.</u>, <u>United States v. Burnette</u>, 698 F.2d 1038, 1046 (9th Cir.

12    1983) (identification reliable where bank teller viewed robber for

13    12 seconds and "his view was unobstructed and at close range").

14           **b.**    **Ramirez-Valdez' degree of attention**

15       Given that Ramirez-Valdez was relying on Defendant to smuggle

16    him into the United States, it stands to reason that he

17    necessarily paid attention to Defendant and what Defendant

18    instructed him to do.   <u>See</u>, <u>e.g.</u>, <u>Jones</u>, 84 F.3d at 1210

19    (witnesses' attention was focused on the defendant because they

20    knew he was robbing the bank).   Indeed, Defendant proffers no

21    legitimate reason why Ramirez-Valdez' degree of attention was

22    somehow lacking.

23           **c.**    **Accuracy of prior description**

24       Although it does not appear that Ramirez-Valdez provided a

25    description of Defendant prior to identifying Defendant in the

26

27

28                                 08CR2429-WQH

photospread, Ramirez-Valdez did immediately identify Defendant in the field as the group's foot guide.

### d.    **Ramirez-Valdez' level of certainty**

Ramirez-Valdez identified Defendant without hesitation both in the field and in the photospread lineup.  This high level of certainty weighs in favor of reliability.

### e.    **Length of time between crime and confrontation**

Less than 24 hours elapsed between the time Ramirez-Valdez was rescued by Border Patrol agents and when he identified Defendant from a six-pack photospread.  See, e.g., United States v. Simoy, 998 F.2d 751, 752 (9th Cir. 1993) (identification by witness six days after crime held reliable); Dring, 930 F.2d at 692-93 (identification two weeks after crime held reliable).

The five factors weigh in favor of a finding that Ramirez-Valdez' identification of Defendant was reliable.  It is within the jury's province to evaluate Ramirez-Valdez' identification of Defendant against any evidence of suggestiveness.  As the Ninth Circuit has noted:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

United States v. Kessler, 692 F.2d 584, 587 (9th Cir. 1982) (citing Manson v. Braithwaite, 432 U.S. 98, 116 (1977)).

**J.    LEAVE TO FILE FURTHER MOTIONS**

The Government does not oppose granting leave to bring further motions so long as those motions are based on evidence (if any) not yet produced in discovery.

**IV**

**CONCLUSION**

For the foregoing reasons, the Government requests that Defendant's motions be denied where indicated.

DATED: August 26, 2008

                                        Respectfully submitted,

                                        KAREN P. HEWITT
                                        United States Attorney


                                        s/ David D. Leshner
                                        DAVID D. LESHNER
                                        Assistant U.S. Attorney

08CR2429-WQH

1
2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

3   UNITED STATES OF AMERICA,        )        Case No. 08CR2429-WQH
                                     )
4                  Plaintiff,        )
                                     )
5            v.                      )
                                     )        CERTIFICATE OF SERVICE
6   ODILON CIRA-RAMIREZ,             )
                                     )
7                                    )
                   Defendant.        )
8   ─────────────────────────────── )

9   IT IS HEREBY CERTIFIED THAT:

10       I, DAVID D. LESHNER, am a citizen of the United States and am
    at least eighteen years of age.  My business address is 880 Front
11  Street, Room 6293, San Diego, California 92101-8893.

12       I am not a party to the above-entitled action.  I have caused
    service of a Response to Defendant's DEFENDANT'S MOTIONS TO:
13  (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; (2) DISMISS THE
    INDICTMENT FOR FAILURE TO ALLEGE *MENS REA*; (3) DISMISS THE
14  RESULTING IN DEATH CHARGE AS UNCONSTITUTIONAL; (4) DISMISS THE
    AIDING AND ABETTING COUNTS; (5) BIFURCATE THE TRIAL; (6) SUPPRESS
15  STATEMENTS AND EVIDENCE; (7) SUPPRESS IDENTIFICATION AND
    TESTIMONY; AND (8) GRANT LEAVE TO FILE FURTHER MOTIONS on the
16  following parties by electronically filing the foregoing with the
    Clerk of the District Court using its ECF System, which
17  electronically notifies them.

18       Andrew Lah, Esq.

19       I declare under penalty of perjury that the foregoing is true
    and correct.
20
         Executed on August 26, 2008.
21
                               s/ David D. Leshner
22                             DAVID D. LESHNER

23

24

25

26

27
                                                              08CR2429-WQH
28                                       39